## NATIONAL RUBBER Co. v. BOSTON RUBBER-SHOE Co.

*(Circuit Court, D. Massachusetts. January 10, 1890.)*

1. PATENTS FOR INVENTIONS—LICENSES—ESTOPPEL TO DENY VALIDITY OF PATENT.
    Plaintiffs granted defendants license to manufacture and sell rubber shoes embodying certain inventions owned by them, on condition that defendants should render quarterly statements of the number thus manufactured, and pay a certain royalty thereon. Defendants manufactured under such license for three years, and paid the royalties as provided, and then refused so to do. *Held* that, in an action to recover the royalties, defendants were estopped from setting up the invalidity of the patents as a bar to recovery.

2. SAME—COVENANTS TO PROTECT AGAINST INFRINGEMENT.
    In the absence of any express covenant in the license that plaintiffs would protect defendants from infringements of the patent, no such covenant will be implied to defeat the plaintiffs' right of recovery.

At Law.

Action by the National Rubber Company to recover royalties on certain inventions under a license to the Boston Rubber-Shoe Company.

*B. F. Thurston, R. M. Morse, Jr.*, and *W. M. Richardson*, for plaintiffs.

*J. E. Maynadier*, for defendants.

NELSON, J. The plaintiffs, the National Rubber Company, being the owners by assignment of the Evory and Heston patent 59,375, for an

improvement in boots and shoes, of the Williams patents 131,199, 131-200, and 131,201, for improvements in overshoes, and of the Williams patent 166,669, for an improvement in rubber boots, by an instrument in writing bearing date January 1, 1882, granted to the defendants, the Boston Rubber-Shoe Company, the right, license, and privilege to manufacture, use, and sell rubber shoes embodying the inventions, or either of them, described in the above-named patents, upon the condition that the defendants should keep accurate accounts and render quarterly statements to the plaintiffs of the number of shoes manufactured by them, and containing the patented improvements or either of them, and pay to the plaintiffs five cents on each and every pair of such shoes so made, called "snow excluders," such payments to be made within 30 days of each quarterly statement. This license, though dated in January, 1882, was not actually executed and accepted until September, 1883, and was dated back to cover goods manufactured by the defendants during the interval. The Evory and Heston patent expired November 6, 1883. The other patents are still in force. The defendants rendered accounts and paid royalties under the license, without objection, from January 1, 1882, to September 30, 1886. On December 30, 1886, they notified the plaintiffs that they should pay no further royalties until the plaintiffs had established their claim to the patents. On March 14, 1887, they notified the plaintiffs that they had consulted counsel, and were advised that, as the Evory and Heston patent had expired, the license was of no use to them, and they therefore repudiated it. A sample of the overshoe manufactured by the defendants was produced at the hearing, marked "Defendants' Shoe." It was agreed that during the three months ending January 1, 1887, the defendants made 25,428 pairs of shoes, each pair like the sample produced. The defendants made no return of the shoes manufactured during this quarter, and refused to pay royalties for them, and it is to recover royalties under the license on these shoes that this suit was brought. Numerous defenses were set up in the answer, but those only will be considered which were relied upon at the hearing.

1. The defendants insist that the declaration is not sufficient to authorize judgment for the plaintiffs on the facts proved. But I think it is sufficiently alleged, according to the rules of procedure in force in this state, that the defendants accepted the license, and manufactured goods under it. This is sufficient to show an implied undertaking to pay the royalties provided for in the license.

2. The defendants also insist that the shoes manufactured by them do not contain the improvements described in any of the patents except the expired Evory and Heston patent. But it is evident from inspection that the sample produced has the double water-proof flap, composed of extensions of the vamp and quarter folded on each side of the instep, and a buckle and flap-tongue arranged to draw equally on each side of the quarter across the instep, which is the feature of the Williams patent 131,201. The sample is also composed of textile fabric and rubber, having an inner upper cut to fit the last or foot, and an outer upper cut

larger than the inner upper, with the surplus portion overlapped. This is the invention described in the first claim of the Williams patent 166,-669.

3. The defendants also maintain that the Williams patent 131,201 was anticipated by the expired Evory and Heston patent, and therefore invalid, and that the first claim of the Williams patent 166,669, being for an improved boot, is not infringed by the use of the invention in the manufacture of shoes. I think the defendants have failed in their attempt to show that the patent 131,201 is a repetition of the Evory and Heston patent. This patent was held valid by Judge SHIPMAN in *Williams* v. *Candee*, 2 Fed. Rep. 683. It is also manifest that except for the license they would have no right to apply to the manufacture of shoes a patented improvement for boots. But, apart from this consideration, it appears that from the date of the license until after the period for which recovery is brought in this action, the defendants acted under the license and enjoyed its benefits. They paid royalties without objection up to September 30, 1886, and it was not until March, 1887, that they made any attempt to repudiate it. They are therefore estopped from setting up the invalidity of the patents.

4. Another defense is that the patents have been infringed by other manufacturers; that this has created competition, and compelled a reduction in the price lists; and that the plaintiffs have not taken the necessary steps to put a stop to these infringements. But the license contains no express covenant by the plaintiffs to protect the defendants against infringements by others, and it has been decided by Judge COLT in this circuit that in licenses of this character there is no implied covenant that the licensor shall afford such protection. *McKay* v. *Smith*, 39 Fed. Rep. 556. The plaintiffs are entitled to judgment for $1,271.40, and interest thereon from the date of the writ. Ordered accordingly.