KLINE *v.* M. GARLAND CO.[1]

1. PATENTS—LICENSES—LIABILITY FOR ROYALTIES.
   Where a licensee of two patents, expiring at different times, agreed to pay royalties thereon during the life of the patents, his liability for royalties on the patent last expiring was not affected by the fact that, upon the expiration of the first patent, the devices covered by it might be used by manufacturers in general.

2. SAME—DUTIES OF PATENTEE—INFRINGEMENTS.
   A contract whereby a patentee sells and assigns to another the exclusive right to manufacture and sell machines to which the patents may be applied, the patentee agreeing to protect the licensee from damages sustained by reason of any failure of the patents to protect such manufacture and sale, imposes on the patentee no duty to protect the licensee from infringements by other manufacturers.

3. SAME.
   The fact that a patentee, at the instance of his licensee, notifies

[1] Rehearing denied April 26, 1904.

infringers to stop their infringements, does not impose on the patentee the duty, which he did not assume in his contract of license, of protecting his licensee in that regard.

Error to Bay; Shepard, J. Submitted October 9, 1903. (Docket No. 40.) Decided January 5, 1904.

*Assumpsit* by Lewis T. Kline against the M. Garland Company for royalties on certain patents. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Affirmed.

Plaintiff was the sole owner of two letters patent issued by the United States,—one for new and useful improvements in log-rollers, dated May 22, 1883, and the other for new and useful improvements in log-rolling devices, dated February 7, 1888. Mr. M. Garland, desiring to enter upon the manufacture and sale of these machines and others to which said patents could be applied, entered into a contract with plaintiff by which plaintiff "hereby bargains, grants, and sells unto said Garland and his assigns the exclusive right to manufacture and sell in any part of the United States of America (excepting Alpena county), during the term for which said letters patent are granted, log-rollers, log-deck and other machines to which said patents can be applied." Mr. Garland agreed to pay certain royalties, to be paid within three months after the date of shipment. All improvements by plaintiff were included in the contract. Mr. Garland agreed to use all judicious means to place the machines on the market and advertise them. Garland reserved the right to terminate the contract on six months' notice. If Garland failed to supply the demand, then plaintiff was to have the right to manufacture and sell. Garland agreed not to manufacture or sell any other machines which should be in competition with those covered by plaintiff's patents. The contract also contains the following clause:

"Said Kline, his heirs and assigns, agree to protect and save harmless said Garland, his heirs and assigns, from

all damages they may sustain by reason of any failure of said patents to protect the manufacture and sale of said machines, but said Garland shall use his best endeavors to assist said Kline in protecting his said patents without any charge."

This contract was executed February 28, 1888. Garland assigned it to the defendant, the M. Garland Company, and all its rights and obligations are governed by the contract. Mr. Garland is the defendant's manager.

The first patent expired May 22, 1900. The other one is still in force. Defendant continued the manufacture and sale of the machines, and to pay for them, until August 1, 1900, when it declined to pay further, although it continued to manufacture the machines. The royalties on 24 machines sold between August 1, 1900, and May 7, 1901, became due. Defendant refused to pay them, claiming (1) that they expired with the expiration of the first patent; (2) that, through the expiration of the first patent, and plaintiff's failure to prevent manufacture by others, defendant had been evicted from the enjoyment of its license, and deprived of the exclusive right of manufacture, which was the consideration or subject-matter of the contract. It sought also to recoup damages for plaintiff's failure to prevent the manufacture of unauthorized machines. At the conclusion of the testimony the court directed a verdict for the plaintiff, holding that the contract did not expire until the expiration of the second patent, that there was no eviction or failure of consideration, that defendant had waived its rights by failing to terminate the contract, that the claimed damages were too indefinite to form a basis of recoupment, and that the defendant had not performed its duty under the contract in giving actual notice to plaintiff of the manufacture of each unauthorized machine.

*Simonson, Gillett & Clark*, for appellant.

*I. S. Canfield (T. A. E. & J. C. Weadock*, of counsel), for appellee.

Grant, J. (*after stating the facts*). We deem it essential to discuss and determine only two of the questions raised : (1) Did the contract terminate with the expiration of the first patent ? (2) Did the plaintiff covenant or contract against the unlawful or fraudulent manufacture of these devices by others ? If these two questions must be answered in the negative, the other questions become immaterial.

1. The contract is entirely free from any ambiguity. It cannot possibly be misunderstood. It covers two letters patent; one terminating in 1900, and the other in 1905. Mr. Garland expressly agreed to pay the royalty upon the devices under the second letters patent during its life. His liability under his contract is not affected by the fact that, upon the expiration of the first patent, the devices covered by it might be used by manufacturers in general. Plaintiff, as patentee, assigned to Mr. Garland the use, manufacture, and sale of all these devices during the entire lives of both letters patent. It was an absolute sale, not for cash, but for royalties, but subject to forfeiture for failure to perform. Neither Mr. Garland nor his assigns could continue to manufacture the devices covered by the second patent, and refuse to pay royalties. He might have rescinded the contract by giving six months' notice, but in no other way could he avoid his obligations under it. Under defendant's construction of the contract, if, when it was made, the first letters patent would have expired in one year, then it would have been a contract for only one year, although the second letters patent had 15 years to run. To sustain this contention would in fact terminate the letters patent before the time fixed by law for its expiration, or at least would suspend its operation, as to Mr. Garland and his assigns, so long as they chose to manufacture the machines. Defendant was manufacturing machines under its contract with plaintiff. Its counsel do not contend that it was not. It cannot now be heard to say that it was not operating under the contract, and was manufacturing machines illegally. So long as defend-

ant manufactures and sells, it must pay. This case does not come within the rule enunciated in *Sproull* v. *Pratt & Whitney Co.*, 101 Fed. 265, where it was held that a contract to manufacture and pay royalties under a number of patents relating to the same art, and expiring at different times, should not be so construed as to require payment of the same royalty after all the patents but one had expired, where the goods manufactured were capable of being separately used, were ordinarily sold for separate use, and only "small portions of the goods were covered by the remaining patent." As we read the two letters patent in this case, we understand that they are not issued upon any single piece, but upon all in combination to accomplish certain results.

2. There is no language in this contract which either expressly or impliedly imposed upon the plaintiff the duty to protect Mr. Garland or his assigns from the unlawful manufacture and sale of the like devices by other manufacturers. Counsel cite no authorities to sustain their contention that that duty was imposed upon the plaintiff under a similar contract. His sole contract was to defend his own letters patent against attacks by others. Whether, under the United States decisions, Mr. Garland would be termed a licensee, so that the rule as to eviction would apply, is immaterial. After the assignment, plaintiff had no control over the manufacture or sale of the articles. He did not agree to investigate and ascertain whether other manufacturers were infringing, or to prosecute those who did infringe. The correspondence between the parties, covering a period of many years, upon this point, cannot be held to change the plain terms of the contract. Plaintiff was equally interested with the defendant in preventing infringements. At the request of defendant, plaintiff wrote to all the parties who defendant informed him it heard were infringing, calling for explanations, and notifying them not to infringe upon his patents, which were owned by the defendant. To these, replies were received denying any infringement. The fact that the

plaintiff complied with the defendant's request to look after these infringements did not read into this contract a covenant to protect the defendant against them. Without such a covenant or agreement, no such obligation exists. *McKay* v. *Smith*, 39 Fed. 556; *National Rubber Co.* v. *Boston Rubber-Shoe Co.*, 41 Fed. 48. Cases holding that, where the patent is void, there is a failure of consideration which avoids the contract, do not apply to this case. Such is *White* v. *Lee*, 14 Fed. 789. Neither does the case of *J. B. Brewster & Co.* v. *Tuthill Spring Co.*, 34 Fed. 769, apply. The patentee in that case sought to enforce the specific performance of the contract of license. The court found that the contract was harsh and oppressive, and virtually obtained by fraud, and left complainant to its remedy at law. In this case the patents were valid, and the defendant obtained the exclusive right to manufacture under them during their lives. Both plaintiff and defendant were jointly interested in preventing illegal manufacture. Defendant could have prosecuted for infringements. Instead of doing so, it reported rumors and hearsay statements of infringements, and endeavored to impose the cost of investigation and suits upon the plaintiff. In no instance did it itself take any steps to stop such illegal manufacture. It follows that the court was correct in directing a verdict for the plaintiff.

Judgment is affirmed.

MOORE, C. J., CARPENTER and HOOKER, JJ., concurred. MONTGOMERY, J., did not sit.