## J. G. GEIST v. CHARLES STIER.

### APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 1 OF PHILADELPHIA COUNTY.

Argued April 4, 1890—Decided April 14, 1890.
[To be reported.]

(*a*) The maker of promissory notes defended against an action thereon, upon the ground that their consideration was the purchase of a certain business, the principal value of which lay in a peculiar process of etching on glass, and that he was obliged to give up the business by reason of a written notice, from a person claiming to be patentee of said process, to discontinue using the same or he would " be dealt with according to law."

1. Standing alone, unaccompanied by an offer to show that the party claiming to have a patent had brought suit and established his right thereto, or had taken any further steps, after giving the notice, to deter the defendant from using said process, or, that in fact the process was ever patented, or even patentable, the written notice to stop using it was not admissible in support of such defence.

2. Conceding that a warranty of the seller's title to said process was implied in the sale, the mere notice and threat to sue did not absolve the defendant from liability to pay the notes: a purchaser of personal property, in full possession thereof, cannot refuse to pay for it because a third party has asserted a superior title and threatened to bring suit for the recovery of the property or its value.

3. A stipulation in a receipt for a promissory note, given for the price of a business sold, to the effect that if it is not paid, or other satisfactory arrangements made, the business shall belong to the vendor, does not give the vendee the right to surrender the business in discharge of his note, but merely gives to the vendor an option to repossess himself of the business, in case the note is not paid at maturity.

Before STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 94 January Term 1890, Sup. Ct.; court below, No. 777 March Term 1887, C. P. No. 1.

On April 14, 1887, J. G. Geist brought assumpsit against Charles Stier upon two promissory notes made by defendant to the order of the plaintiff, one of them dated October 25, 1880, for $550, at one year, and the other dated October 30,

1880, for $250, at six months, both of them with interest. The defendant pleaded non-assumpsit.

At the trial on November 14, 1888, the plaintiff put in evidence the notes in suit, the defendant's signatures thereto being admitted.

Thereupon, the defendant was called as a witness on his own behalf, and testified that prior to the giving of the notes to the plaintiff, one Holtzman, who had been carrying on the business of etching on glass at No. 204 North Third street, Philadelphia, became sick, and the plaintiff came to the witness and proposed to sell him that business; that finally the witness purchased the business from the plaintiff, giving therefor the note for $550, and receiving from the plaintiff a paper signed by him, which was as follows:

"Received, Philadelphia, October 25, 1880, of Mr. Charles Stier his promissory note, for five hundred and fifty dollars for twelve months for business in No. 204 North Third street, 3d and 4th story, for stock and fixtures, with ware finished and unfinished. I, the undersigned, to pay all bills due this day against said business. If said note should not be paid, or other satisfactory arrangements made, the above business shall belong to me in the same state Mr. Chas. Stier receives it, and Mr. Stier to pay the carpenter bill due."

The defendant testified further that he gave the plaintiff the note for $250, because the plaintiff said that he had put more than $550 into the business; that on October 25, 1880, there was outstanding a bill of $236 for glass, due to the New England Glass Company, which the plaintiff did not pay, as he was required by his agreement to do, and which was subsequently paid by the witness; that the attorney of a Mr. Tietz who had formerly worked for Holtzman and understood all about the business, wrote to the witness that Tietz had a patent, and stopped the witness from carrying on the business; that the witness informed the plaintiff that Tietz claimed a patent upon the process of etching the witness was using, but could get no satisfaction from him, and the witness then surrendered the business to the plaintiff; that the witness could not tell what was in the establishment when he surrendered the business to the plaintiff, or what process it was that was patented.

Charles Yockel, called by defendant, testified that he wrote

the agreement and receipt dated October 25, 1880, and it was written in pursuance of his suggestion that the plaintiff ought to have some additional security; that the principal value of the business lay in the process for etching glass, the stock and fixtures not amounting to much; that at the end of a year the defendant surrendered the business, but whether in the same condition as when the defendant received it, the witness could not say.

The defendant offered in evidence the following letters, addressed to Charles Stier & Co., successors to Holtzman & Co., and signed by Mr. Henry D. Wireman, attorney for Tietz & Stenger, the first being dated January 19, 1881, and the second, January 26, 1881:

" Gentlemen : My clients, Messrs. Tietz & Stenger, having positive proof that you have been, and still are, wrongfully using a certain process in your business for the ornamentation of glass by etching, patented by G. A. Julius Tietz, and covered by letters patent No. 236,381, dated January 4, 1881, you are hereby notified that if you continue to infringe upon the said patent, you will, without further notice, be dealt with according to law."

" Gentlemen : I understand that you are still working contrary to your express promise to me. Unless you stop at once, proceedings will be commenced on Wednesday without further notice."

The admission of these letters was objected to by the plaintiff as being entirely immaterial and irrelevant to the issue.

By the court: Objection overruled; exception.[1]

In rebuttal, the plaintiff testified as follows:

Mr. Stier came to me, and said he would like to have the business himself. I told him I didn't think Holtzman would sell it to him, because he disappointed him in money matters. Mr. Stier was a partner in the firm of Holtzman & Co. I said, I think I can buy it for you. He told me to try. I asked Mr. Holtzman, and he said he would sell it to me. Several days afterward Mr. Stier called again, and asked me whether I had succeeded. I told him yes, I had bought it, and wanted him to raise the money. I was selling him Holtzman's share for $800. He said he would write to an uncle of his wife in Virginia, a General Leatherhose, who was wealthy, and would

### Charge of Court below.

send him money. The money didn't come, as he said, so he wrote to Germany for some money. Still he did not get any. In the meantime I was advancing him money. He would say, just advance another week's expense. I got tired advancing money and refused to advance any more. Then he looked up Mr. Yockel. Then he came to my house in the evening and said he had found a friend of his, Mr. Yockel, but he would not give $800; he would only give $550. He thought it wasn't worth more. I said to Mr. Stier, you know I advanced you $800, and that I want from you. Then he said, we will make two notes, one for $550, and the other for $250. I gave him the business. I did not get anything for it.

By the court: Was this note given for money loaned by you? A. Yes, sir. This was for money advanced Mr. Stier. I gave him the business. I never took back the business, nor was it ever surrendered to me. I had nothing to do with it after I received the notes.

Julius Tietz, after testifying that he was employed by Holtzman in 1880 as an etcher on glass, and, after the defendant commenced to carry on the business, was employed by him, testified further as follows:

I used different processes of etching. The process which Tietz & Stenger had patented was an old process. I had used it, and knew others had used it long before. While I worked at Gillender & Co.'s we were using it, and no one interfered. The patent was only on the manner of taking the paper designs off the glass.

At the close of the testimony the court, BIDDLE, J., charged the jury as follows:

This, as you have heard, is a suit on promissory notes for $800. The defendant does not deny the signing or giving of the notes in the purchase of this business, or rather Mr. Holtzman's share of the business as carried on by Holtzman & Stier. Mr. Holtzman could not carry on his business because of ill health, and it was his interest that was afterwards conveyed to Mr. Stier, the defendant. The kind of business that was carried on was etching on glass.

[Some time after the purchase by the defendant, a notice was received from a lawyer notifying him to discontinue the

process of etching then in use by him; that he was infringing upon a patent. The defendant says that he informed Mr. Geist of this notice, but that he did nothing in the matter, and that he could get no satisfaction from him. If Stier's story is correct, and he was forbidden to carry on the business, and so notified Geist, and he failed to do anything, Stier was not bound to pay. When a man sells personal property, a horse, merchandise, etc., he is bound to warrant the title. If Mr. Geist undertook to sell this business, he was bound to guarantee the title to what he sold, and if the title was not good he is responsible.] [2]

Mr. Geist, the plaintiff, gives a different statement of the transaction. He says that he advanced money to the defendant to carry on this business, and that it was only for the money so advanced by him that the notes were given; that he received nothing for the business, but gave it to the defendant.

The defendant says that he afterwards handed back the business to the plaintiff. Mr. Yockel, also, says that the business was handed back, but does not remember whether it was in the same condition that Mr. Stier received it or not. [My construction of the agreement attached to the receipt is, that it gave to the defendant an option to return the business, if he so desired, and by so doing discharge his obligation upon the notes given for it; and that it was not optional with the plaintiff to receive back the business, which he might exercise or not, as he thought proper.] [3]

The jury rendered a verdict for the defendant. A rule for a new trial having been discharged, judgment was entered on the verdict, when the plaintiff took this appeal, specifying that the court erred:

1. In admitting the defendant's offer.[1]
2, 3. In charging the jury as set forth in [ ] [2] [3]
4. In not directing a verdict for the plaintiff.

*Mr. John S. Freeman*, for the appellant:

1. The receipt which was given contemporaneously with the notes, corroborates the plaintiff in his statement that the subject of the sale to the defendant was "the stock and fixtures, with ware finished and unfinished." No one, not even the de-

Arguments.

fendant, claims that the notes were given for the right to use a certain process in the business. The defendant does not say that he purchased any such right from the plaintiff. And the letters written to the defendant by the attorney of a third person, should have been rejected as immaterial and irrelevant. The defendant gives as a reason for not paying the notes, merely his being stopped from using a particular process; and the jury were practically instructed that if they believed the defendant stopped the business by reason of receiving these letters, and the plaintiff did nothing in the matter, there could be no recovery. This instruction was clearly error.

2. The court erred, also, in its construction of the memorandum annexed to the receipt of October 25, 1880. The only purpose of that memorandum was to afford additional security to the plaintiff in case the notes should not be paid at maturity. It was not intended to make void the promissory notes, but simply to give the plaintiff the right to demand the return of the business, on failure of the defendant to pay them. There is no evidence that he ever made such demand, and the defendant's testimony, that he surrendered the business means nothing more than that he simply abandoned it, when Yockel refused to advance more money. The plaintiff positively testifies that he never took it back. The agreement must be interpreted according to the understanding of the parties, that it was to afford additional security to the plaintiff; but even if it were a contract permitting the defendant to rescind, he was not in position to exercise the right, as he does not pretend that the business was in the condition in which he received it: Story on Sales, §§ 421 et seq.; Benjamin on Sales, §§ 764 et seq.

*Mr. Edward D. McLoughlin*, for the appellee:

1. The receipt signed by the plaintiff plainly expresses the fact that the business was sold to the defendant, and, as the writer of the receipt testified, the principal value of the thing sold lay in the process for etching. That the jury did not believe the plaintiff's denial that the business was sold, is not strange, as his testimony is a tissue of contradictions. All these questions of fact have been settled by the verdict. When the business was stopped by notice that it was infringing on a patent, the consideration of the notes failed. The letters of the patentee's

Opinion of the Court.

attorney were not hearsay, but were admissible to prove the
fact that notice to stop had been served upon the defendant,
and were the best evidence of that fact: Greenl. on Ev., §§ 100,
101, 124.

2. The instructions to the jury simply meant that if the con-
sideration of the notes failed there could be no recovery. Fail-
ure of consideration was fully established by the testimony for
the defence, and the plaintiff, in his testimony in rebuttal,
makes neither explanation of, nor reference to the claim of in-
fringement. The process being the consideration of the notes,
and the plaintiff having no right to sell it, and making no effort
after notice to protect the defendant, the latter, being obliged
either to abandon the business or to risk a lawsuit in defence
of his purchase, was justified in surrendering the business to
the plaintiff and declining to pay the notes. By his long de-
lay to sue, the plaintiff has apparently recognized the force of
the defendant's position.

3. The transfer to the defendant was not absolute, as it con-
templated and provided for " other satisfactory arrangements "
than the payment of the notes, and the plaintiff evidently an-
ticipated some difficulty. But, independent of the terms of
the receipt, the defendant had a right to rescind, as a vendor
selling personal property of which he is in possession, impliedly
warrants the title, and if the purchaser does not get that for
which he has paid, the consideration fails: Benjamin on Sales,
540; Boyd v. Bopst, 2 Dall. 91; Eagan v. Call, 34 Pa. 236;
People's Bank v. Kurtz, 99 Pa. 344; Wood v. Sheldon, 42 N.
J. L. 421 (36 Am. Rep. 526). The defendant having a right
thus to surrender, and having done so, as is settled by the ver-
dict, the construction of the concluding clause of the receipt is
unimportant. But the charge was right; it meant simply that
the plaintiff could not claim any option under the receipt, if
the facts were as alleged by the defendant.


OPINION, MR. JUSTICE STERRETT:

This suit was brought to recover the amount of two promis-
sory notes made by defendant to the order of plaintiff, one for
$550, at one year from October 25, 1880, and the other for
$250, at six months from October 30, 1880, both with interest.
The making and delivery of the notes being admitted by de-

fendant, they were put in evidence by the plaintiff, and thus a clear prima facie case in his favor was made out.

In substance, the defence was that the notes were given for a certain business, stock, and fixtures sold by plaintiff to defendant, the principal value of which business was a peculiar process of etching on glass; that, a few months after his purchase, defendant was notified by a person who claimed to be the patentee of said process, to discontinue using the same, or he would " be dealt with according to law; " and, thereupon he informed plaintiff of the fact that he had been so notified, but the latter neglected to do anything, and defendant was obliged to give up said business, because its only value consisted in the said process of etching on glass, etc.

For the purpose of maintaining the defence thus alleged, the defendant gave in evidence two letters, notifying him to cease using said process, or suit would be brought, etc. The admission of these letters, and the use made of them by the learned judge in his charge, constitute the subjects of complaint in the first and second specifications, respectively.

There was no evidence tending to show that any suit was ever brought by the alleged patentee, or any further steps taken by him or any one else, to deter defendant from using said process; nor was there a particle of evidence to show that the said process was ever patented, or even patentable. The only evidence, bearing on that subject, tended to show that the process had been in general use, and was, therefore, not even patentable. The sum and substance of defendant's evidence, in relation to the process, is that he was notified to cease using it and threatened with suit if he did not do so.

Standing alone, the letters above referred to, and quoted at length in the first specification, were incompetent; and there appears to be no testimony in the cause connecting them with anything that would make them competent evidence. In other words, as the case stood, it was error to receive them. If they had been followed by evidence showing that the party claiming to have a patent for the process had brought suit, and established his right thereto, the case would have been different; but no such offer of evidence was made, in connection with the letters or otherwise.

Again, the use that was made of the letters by the learned

judge in that portion of his charge covered by the second specification was unduly prejudicial to the plaintiff. Referring to the letters, the learned judge said : " Some time after the purchase by the defendant, a notice was received from a lawyer notifying him to discontinue the process of etching then in use by him ; that he was infringing on a patent. The defendant says he informed Mr. Geist of this notice, but that he did nothing in the matter, and that he could get no satisfaction from him. If Stier's story is correct, and he was forbidden to carry on the business, and so notified Geist, and he failed to do anything, Stier was not bound to pay. Where a man sells personal property, a horse, merchandise, etc., he is bound to warrant the title. If Mr. Geist undertook to sell this business, he was bound to guarantee the title to what he sold, and, if the title is not good, he is responsible."

Conceding the correctness of the general proposition that a warranty of the seller's title is implied in every sale of personal property, where there is no understanding to the contrary, it is not applicable to the facts of this case. At most, the defendant's right to use the process was challenged, and suit threatened ; but no suit was brought, nor was the defendant prevented in any way from continuing to use the process. A purchaser of personal property, in full possession thereof, cannot refuse to pay for it because a third party has asserted a superior title and threatened to bring suit for the recovery of the property or its value. The notice and threat to sue, without more, did not absolve the defendant from his liability to pay his notes.

We think the learned judge also erred in construing the memorandum appended to the receipt, quoted in the third specification. The only purpose of the provision therein contained was to afford additional security to the plaintiff, in case the note was not paid at maturity. All that was intended by the provision was that if defendant did not pay the note at maturity, etc., the plaintiff should have the right to repossess himself of the business, property, fixtures, etc.

Thus far, the questions involved have been considered mainly in the light of the defendant's testimony. The plaintiff's version of the transaction is materially different, and should not be ignored in submitting the case to a jury, if it is

found necessary to do so. He testified, in substance, that at the instance of the defendant, and as a matter of accommodation to him, he advanced the money and purchased Holtzman's interest in the business, etc., expressly for defendant, and that the notes in suit were given for the money thus advanced.

The last specification is not sustained, for the reason that it does not appear that the court was requested to give any such instruction; nor was the plaintiff entitled to it, if he had made the request.

> Judgment reversed, and a venire facias de novo awarded.