JOHN POTTERTON & another *vs.* SEARS B. CONDIT, JR.

Suffolk.   March 11, 1914. — May 28, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & CROSBY, JJ.

*Patent. United States Courts. Jurisdiction. Contract,* Construction. *Equity Pleading and Practice,* Findings of judge.   *Words,* "Found."

A suit in equity founded on an alleged breach of a contract in writing, to pay a stipulated royalty on the selling price of an appliance patented by the plaintiff and manufactured and sold by the defendant under an exclusive license from the plaintiff, can be maintained in our courts; as the United States courts under U. S. Rev. Sts. § 711, cl. 5, do not have exclusive jurisdiction of such a suit brought upon the contract and arising out of it, even where the validity of a patent incidentally is drawn in question.

In a suit founded on an alleged breach of a contract in writing in failing to pay a stipulated royalty on the selling price of an appliance patented by the plaintiff and manufactured and sold by the defendant under an exclusive license from the plaintiff, where it appears that by a provision of the contract the defendant was to be excused from paying the royalty if the plaintiff's patent should be "found at any time to infringe other patents," the word "found" must be construed to mean found by a court of competent jurisdiction; and the fact that the defendant received from another manufacturer a notice that the alleged patent of the plaintiff was an infringement of a patent used by such manufacturer, which was followed by no further action on his part, is immaterial.

Where a suit in equity is reported to this court with the consent of the parties by the trial judge, who states his findings of fact but does not report the evidence, the findings of the judge must be taken to be true.

CROSBY, J.   The subject matter of the contract upon which this suit is brought is a patent granted on a pipe cap for outdoor wiring, issued to the plaintiff Potterton.   As the suit is brought upon the contract and arises out of it, the question presented is not one where the federal courts have exclusive jurisdiction under U. S. Rev. Sts. § 711, cl. 5.   *Marshall Engine Co.* v. *New Marshall Engine Co.* 199 Mass. 546.

The case is before us upon a report made by a judge of the

Superior Court.* It is agreed that on May 29, 1909, the plaintiffs were the owners of an invention described in an application for letters patent in the name of the plaintiff Potterton, and that on that day the plaintiffs and the defendant entered into a written agreement by the terms of which the plaintiffs granted to the defendant the exclusive license to manufacture, use and sell the invention described in the application for letters patent. Afterwards, on November 2, 1909, the patent was granted to the plaintiffs. "After the making of the contract the plaintiffs delivered to the defendant the patterns and other personal property referred to in the bill for his use in manufacturing and selling under the terms of the contract." The third paragraph of the agreement is as follows: "3. The party of the second part agrees to pay to the parties of the first part five per cent (5%) of the selling price derived from the manufacture and sale of any and all pole caps under this license whether manufactured directly by the party of the second part or by the sub-licensees of the party of the second part; the minimum amount to be paid in royalties on pole caps as covered by pending application, Serial No. 411906, not to be less than Five Hundred Dollars ($500.00) in each year. The parties of the first part further agree that in case of severe competition in pole caps in which it is necessary for the party of the second part to sell pole caps as covered by pending application, Serial No. 411906, at less than cost or in case of patent litigation or for any cause whereby it becomes a hardship for the party of the second part to pay the stipulated amount Five Hundred Dollars ($500.00) on account of royalties as above provided for, then the party of the second part shall have the right to cancel this agreement on ninety days' written notice; it being the intent and purposes of this contract that both parties shall give such attention and so conduct their part hereunder that the business shall be as highly beneficial as possible to all parties, and to this end, the parties of the first part agree not to enter into competition with the pole caps of the party of the second part and not to aid any such competition in any way." The sixth paragraph of the agreement provides: "6. The said

* *Jenney*, J., before whom the case, a suit in equity, was tried and who with the consent of the parties reported it for determination by this court.

parties of the first part agree to put said party of the second part promptly in possession of all information, including descriptions, drawings, patterns, etc., they may be possessed of in order to enable the said party of the second part to manufacture; and the said party of the second part agrees to use all diligence in pushing the manufacture and sale of pole caps in accordance with this contract. The party of the second part further agrees during the term of this agreement not to manufacture pole caps of any other type than that of this agreement, unless said pole caps shall be found at any time to infringe other patents, in which case he shall be excused from his obligations under paragraphs 3 and 6, as he shall also in case the patent or patents on the pole caps of the parties of the first part shall be found to be invalid in any essential respect."

On or about December 2, 1909, and while the contract was in force, the defendant received a letter from the Gillette-Vibber Company, notifying him that the pipe cap manufactured by him was an infringement of a patent owned by that company, and forbidding him from "further infringement by either making, using or selling such pipe caps." The notice so received by the defendant was communicated by him to the plaintiffs. The attorneys of the latter replied to the letter above referred to, and the report states that "The Gillette-Vibber Company has taken no further action and made no further communication to either plaintiffs or defendants concerning the subject matter of the correspondence hereinbefore set forth." "There has been no judicial determination that the Potterton cap infringes the Vibber patent, nor has there been any patent litigation involving the Potterton patent, the Potterton caps or the Vibber patent."

The defendant notified the plaintiffs by letter dated May 28, 1910, that the contract "would have expired shortly if it had not been long since terminated, . . . that it is at an end," and offered to render an account and pay whatever was due. At the hearing in the Superior Court the plaintiffs waived any claim to recover for any breach of the contract except for the minimum price of $500 under clause 3 and for the return of the personal property therein referred to. The judge found that there was no fraud or concealment on the part of the plaintiffs or either of them.

The evidence offered by the defendant of a certified copy of the patent issued to W. H. Vibber for pipe cap for outdoor wiring and of the file wrapper of the Potterton patent, as well as the evidence that the pole caps manufactured under the Potterton patent were an infringement of the Vibber patent, was all properly excluded. None of the evidence excluded was competent upon the issue of fraud in view of the finding of the judge that "there were no representations made [by the plaintiffs] at the time of or prior to making the contract concerning the Vibber patent." The evidence was not admissible upon the question of infringement or upon any other ground. It is generally held that a licensee of a patent cannot avoid the payment of royalties merely because it is asserted that the device described in the patent is an infringement of some other patent. It has been held, however, that a licensee, in order to avoid the payment of royalties, must prove an eviction or what is equivalent thereto. *White* v. *Lee,* 14 Fed. Rep. 789. *Consumers' Gas Co.* v. *American Electrical Construction Co.* 50 Fed. Rep. 778, 780. *Bradford Belting Co.* v. *Kissinger-Ison Co.* 113 Fed. Rep. 811, 814, 815. In the case of *Standard Button Fastening Co.* v. *Ellis,* 159 Mass. 448, 449, 450, this court said: "But where a mere license is given, it is held that there is no failure of consideration till the licensee is actually prevented from using the invention." We are of opinion that under the sixth paragraph of the contract the word "found" in the clause "unless said pole caps shall be *found* at any time to infringe other patents" must be construed to mean found by a court of competent jurisdiction. This word implies a finding after judicial inquiry. Webster's International Dictionary, 817. 19 Cyc. 534. Upon a judicial determination that the patent was an infringement of another patent the obligation of the defendant would end automatically. It not having been determined that the manufacture of pole caps is an infringement of any other patent, the defendant is liable, under the third paragraph of the contract, for the minimum price of $500.

The judge has found that there has been no accounting between the parties and that the defendant has paid the plaintiffs nothing on account of the contract. He has also found that the letter of May 28, 1910, did not terminate the contract and "that the defendant continued to sell under the contract after

the expiration of the period of time fixed by the contract for the termination of the same after the giving of notice." In view of the last finding, the contract is to be regarded as terminated on November 16, 1910, in accordance with the agreement of the parties entered into on that date. As the evidence is not reported, the findings of the judge who heard the case should be taken to be true as to all facts found by him.

In accordance with the terms of the report a decree is to be entered in favor of the plaintiffs for the return of the patterns and property therein referred to, and for the payment to the plaintiffs by the defendant of the sum of $733.32, with interest from November 16, 1910.

*So ordered.*

*E. E. Kent,* (*J. T. Brennan* with him,) for the plaintiffs.
*A. W. Blakemore,* for the defendant.