**VICTORY BOTTLE CAPPING MACH. CO., Inc., v. O. & J. MACH. CO. et al.**

(Circuit Court of Appeals, First Circuit.    May 17, 1922.)

No. 1529.

1. **Appeal and error** ⬤⟳1052(5)—**Admission of evidence to aid construction of contract held harmless.**

The admission of evidence concerning prior negotiations to aid in construing a written contract, if erroneous, was not prejudicial, where the contract should, as a pure question of law, have received the interpretation put on it by the trial judge after receiving the evidence.

2. **Patents** ⬤⟳191—**Patentee may convey right to exclude given by patent, with his right to make article existing in him independent of patent.**

Though a patent gives only the right to exclude others from making the article, not the affirmative right to make the article which the patentee possessed independent of the patent, the patentee may by one contract convey both the right to exclude manufacture by others and the right to manufacture himself.

3. **Patents** ⬤⟳211(1)—**Contract held to convey right to make and sell.**

A contract whereby a patentee gave to another the exclusive right to make, use, and sell the invention, and undertook to protect the other in the exclusive right granted against all infringers, licensees, or others, and which required the licensee to proceed immediately to manufacture and sell on a royalty basis, and to expend a stipulated sum annually in advertising the machine, was not a bare license, granting the licensee only the right under the patent to exclude manufacture of the machines by others; but the grant of the right to manufacture and sell was a material part of the consideration, so that the licensee was entitled to a cancellation of the contract when it appeared the manufacture of the machines infringed patents owned by others.

4. **Patents** ⬤⟳211(1)—**Grant impliedly includes that without which thing expressly granted would be useless.**

The maxim that one granting a thing impliedly grants that without which the thing expressly granted would be useless to the grantee is as applicable to grants of patent rights as to other species of property.

5. **Contracts** ⬤⟳143—**Intention of parties is to be gathered from whole instrument.**

A contract must be construed as a whole, and the intention of the parties gathered from the entire instrument, and not from detached portions.

6. **Patents** ⬤⟳129—**Licensee can assert invalidity in suit for royalties, after there has been equivalent of eviction from right to manufacture.**

Though a licensee, who has enjoyed all the privileges under his license, cannot withhold payment of the royalties because of alleged invalidity of the patent, he can show a failure of consideration for his agreement to pay royalties, by proving what corresponds to an eviction from his right to manufacture under the licensed patent.

7. **Patents** ⬤⟳212(1)—**Evidence held to show eviction of licensee authorizing cancellation of royalty patent.**

Where the licensee of a patent was notified by the owners of other patents that the construction of the machines under the patent was an infringement of the other patents, and the patentee's attorney after investigation practically conceded infringement and advised discontinuance of manufacture, there was a substantial eviction of the licensee, which entitled him to a cancellation of his royalty contract for failure of consideration; it being unnecessary that he engage in apparently hopeless litigation with the other patentees to have the issue of infringement determined.

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. **Patents ⊙⊸218(1)—Patentee held entitled to royalty on machines sold which infringed another patent.**

Where the licensee had manufactured and sold 40 machines before objection was made they infringed other patents, and there was no probability it would be held liable for damages because of such infringement, the patentee is entitled to the stipulated royalty on those machines, less the damages suffered by the licensee by breach of the patentee's contract to convey exclusive right to manufacture and sell.

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

Suit in equity by the Victory Bottle Capping Machine Company, Inc., against the O. & J. Machine Company and others. Decree for defendants, and plaintiff appeals. Decree modified and affirmed, and cause remanded for accounting.

A. Parker-Smith, of New York City (Roberts, Roberts & Cushman, of Boston, Mass., on the brief), for appellant.

Louis W. Southgate, of Worcester, Mass., for appellees.

Before BINGHAM and JOHNSON, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge. This is an appeal by the Victory Bottle Capping Machine Company, Inc., plaintiff, appellant, from an interlocutory decree of the District Court of Massachusetts dismissing plaintiff's bill in equity, and granting defendant the O. & J. Machine Company cancellation under its counterclaim of an agreement between the parties, an injunction for the enforcement of cancellation, and damages for failure of consideration.

The subject-matter of this litigation is the Oliver patent, No. 1,310,-960, applicable to bottle-capping machines.

About January 1, 1919, Ernest A. Oliver, of Flushing, N. Y., completed the construction of a bottle-capping machine. A few days later this machine was exhibited to Charles H. Oslund and J. Emanuel Johnson, of Worcester, Mass., the treasurer and president of the defendant O. & J. Machine Company. At the time of this conference no patent had been applied for by Oliver, but it was stated by Mr. Miller and Mr. Wickery, both of whom were interested in the enterprise with Oliver, that they were advised by their patent attorney that they had a "clear field." Shortly thereafter the plaintiff corporation was formed under the laws of the state of New York for the purpose of holding the Oliver patent; an assignment by Oliver was made to the corporation and a patent applied for January 24, 1919, which was granted July 22, 1919.

Following the inspection of the machine by Messrs. Oslund and Johnson, and before the patent was granted, negotiations were entered into between the new corporation, the Victory Bottle Capping Machine Company, Inc., and the O. & J. Machine Company, which resulted in a contract—Plaintiff's Exhibit A—the material parts of which provided that the plaintiff, called in the contract the "party of the first part," gave the defendant, called in the contract the "party of the second part"

⊙⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the "sole and exclusive right to make, use, and vend the said invention" throughout the United States and territories, during the "full term of said patent and any extension thereof," subject to certain terms and conditions, the first of which was that the defendant should proceed without delay to make the necessary preparations for manufacturing machines at once.

The contract also provided that the defendant should spend annually the sum of $1,000 in advertising, in such a manner as would best promote the sale of such machines, and that it would manufacture at least 50 of the machines each year, subject, however, to delays on account of unavoidable casualties.

The third paragraph provided for the payment of a royalty of $300 on each machine manufactured and sold. It also provided terms of payment.

Paragraphs 10 and 12, quoted in full, were as follows:

"Tenth. The party of the first part will, at its own cost and expense, defend and protect the party of the second part in the exclusive making, using, and vending of the machines included in this agreement against all infringers, licensees, or others in the countries where applications for patents are now pending, and where patents have been or may be issued for such machines, and will, at its own expense, take such proceedings in law and in equity as may be necessary and proper to prevent and enjoin such infringement, and to save the party of the second part harmless from the results of such acts; and, in case of the failure of the party of the first part to fulfill any of the obligations in this clause contained the party of the second part shall have the right and privilege of prosecuting and defending any such proceedings at its own expense, and to charge the same against the party of the first part and collect from it, provided, however, that the party of the second part shall first give to the party of the first part 30 days' notice in writing demanding compliance with the terms of the agreement on its part, before proceeding to exercise the rights hereby conferred on the party of the second part."

"Twelfth. That any improvements or modifications to the said machine, made by the party of the second part, or its successors or assigns, shall belong to the said party of the first part."

By the terms of paragraph 13 the plaintiff agreed to execute all licenses or other documents necessary to vest in the defendant the right to make, use, and vend said machine.

Paragraph 14 provided that, if letters patent for which application had been made were not granted, then the defendant might terminate the agreement forthwith; and if the plaintiff should fail to comply with the terms of the agreement, or any of them, the defendant might, at its option, terminate the agreement upon giving 90 days' notice thereof in writing. Such termination, however, was not to release the defendant from any liability then due to the plaintiff.

After the agreement was executed the machine built by Oliver was sent to defendant's factory at Worcester, Mass., as a model. The defendant company at once set to work making the necessary equipment for the manufacture of the machines and the fulfillment of its contract. In the course of such preparations, Messrs. Oslund and Johnson invented and developed some important changes in the Oliver machine, and filed an application for a patent therefor October 31, 1919, serial No. 334,683. It is claimed that, while these changes were primarily designed for use on the Oliver machine, they are capable of

general use. The defendant manufactured or had in the process of manufacture 40 machines, when on November 11, 1919, it received a letter from attorneys of the Crown Cork & Seal Company, of Baltimore, Md., that the machines it was manufacturing were an infringement on two patents owned by said Crown Cork & Seal Company, viz. the Brewington patent, No. 860,787, dated July 23, 1907, and the La Porte patent, No. 1,080,114, dated December 2, 1913, and threatening immediate suit if the Oliver machines were put on the market.

This letter was immediately called to the attention of the plaintiff and a demand made for the protection which it claimed was contemplated in the terms of the agreement. A conference of the agents of the respective corporations was held in New York, at which the defendant requested the plaintiff to furnish an indemnity bond, but the request was refused. Thereafter the plaintiff's counsel called on counsel for the Crown Cork & Seal Company, the result of the interview being embodied in a letter dated December 18, 1919, which was forwarded to the defendant company by the O. & J. Machine Sales Company, to whom it was addressed. The following excerpt is taken from the letter:

"I told him [counsel for Crown Cork & Seal Company] that we had sold some machines and had some more in the works amounting to about 40 in all, and that while we would fight the suits if we had to, I had advised you to stop making the present machine and either try to sell your patents to the Crown Cork & Seal Company or to confine your activities in this line to some noninfringing form of machine."

After this letter was received, and after getting the advice of its own counsel, the defendant completed the machines it had in process of manufacture and stopped the further manufacture of them. It claims to have expended a large amount of money in making preparations for the enterprise, and has refused to pay any royalties to the plaintiff for the 40 machines built and sold. The plaintiff brought its bill praying for an accounting for the royalties provided for in the third paragraph of the contract, for a decree under paragraph 12 ordering an assignment by the defendants of all rights claimed under the Johnson and Oslund application for a patent, filed October 31, 1919, and all other improvements claimed by said defendants, and concluding with a prayer for an injunction perpetually enjoining the defendants or any of them from assigning to third parties or otherwise disposing of any inventions embodying improvements or modifications to bottle-capping machines they had made.

Defendants' answer in its final form filed by leave of court admitted the execution of the contract, and set up as a defense thereto a breach of paragraph 10 of the contract and the facts substantially as above set forth, with a counterclaim for damages for expenses incurred in experimental work, drawings, jigs, patterns, and equipment for the manufacture of the machines, which expense they allege is a total loss.

The court below found and ruled that the consideration for the contract was the "agreement by the plaintiff to give the defendant the exclusive right to make, use, and vend the machines contemplated by the parties to be made and a model of which was in existence and viewed by the parties before the making of the contract."

It was further found as a fact that the machine could not be manu-

factured without infringement upon the Brewington and La Porte patents owned by the Crown Cork & Seal Company; that the plaintiff had failed to protect the defendant as provided in paragraph 10; that the plaintiff corporation had no property, except its interest in the Oliver patent and the royalties and improvements in the hands of the defendants; and that the defendants were justified in ceasing to manufacture the Oliver machines.

A decree was entered ordering the cancellation of the contract of January 31, 1919, dismissing plaintiff's bill, and awarding defendant damages under its counterclaim to be determined by a master.

Against this decree the plaintiff, appellant, has assigned 12 errors, of which the first 7 relate to the substance of the decree, 8 and 9 relate to the admission of evidence, and 10, 11, and 12 refer to the action of the District Court in allowing the defendant to file its counterclaim.

The important issues between these parties relate to the construction of the contract and the allowance of damages under defendants' counterclaim.

[1] The District Court received testimony of negotiations leading up to the execution of the contract, both oral and documentary. Defendants' Exhibits 5 and 6. The documentary evidence consisted of a letter dated January 17, 1919, accompanying a "memorandum form" of a contract which, with changes, some of which were important, was finally executed January 31, 1919, as the final contract of the parties. Plaintiff's Exhibit A, ante. The memorandum was also received. Defendant's Exhibit 6. Exceptions were taken to the introduction of this testimony, and error alleged (assignment No. 9).

Independent of the testimony of what transpired leading up to the execution of the contract of January 31, 1919, we think the contract should, as a pure question of law, receive the interpretation put upon it by the learned trial judge; therefore the question of the admissibility of the evidence above referred to becomes immaterial.

[2] The plaintiff claims that the contract of January 31, 1919, is a license contract, and that in the absence of an express warranty such a license does not imply any undertaking by the licensor that the patent under which the license is granted is valid, or that the machine embodying the invention can be manufactured without infringing other patents. Its contention is that a patent does not grant any affirmative right to manufacture the article patented, as that is a right possessed by the patentee in any event, but that it merely grants the right to exclude others, citing Bloomer v. McQuewan, 14 How. 539, 14 L. Ed. 532, and other cases in point. Taking this undoubtedly sound principle of law as a foundation to build on, plaintiff's next contention is that a patentee, by his general ownership of the patent, having only the right to exclude others, conveys by his license to his licensee only that right of exclusion and immunity from actions on the part of the licensor, without guaranty that the licensee himself can make use of the invention. Webster Electric Co. v. Podlesak (D. C.) 255 Fed. 907; Chicago & A. Ry. Co. v. Pressed Steel Car Co., 243 Fed. 883, 156 C. C. A. 395.

We cannot accept any such narrow construction of the contract in suit. If we were to concede that a patentee obtains nothing but the

right of exclusion under his patent, it does not follow that he may not by contract grant both that right of exclusion and his natural original right to manufacture, use, and vend, which the plaintiff concedes an inventor or owner of a patent has independent of the patent.

These rights may be individual and distinct, but they are all property rights, and may be conveyed singly or collectively by a contract governed in its construction by the rules of the common law.

Mr. Justice Miller says in the case of Adams v. Burke, 17 Wall. 453, 21 L. Ed. 700 (Mass. Dist.):

"The right to manufacture, the right to sell, and the right to use are each substantive rights, and may be granted or conferred separately by the patentee."

To these three might be added a fourth, viz. the right of exclusion.

What form of contract is essential to convey these property rights, whether in fact a contract has been made, the validity of the particular contract, and the obligations of the contracting parties are questions to be determined by the principles of the common law.

[3] The granting clause of the first paragraph of the contract in question (Plaintiff's Exhibit A) reads:

"The party of the first part [plaintiff] hereby gives to the party of the second part [defendant] the sole and exclusive right to make, use, and vend the said invention," etc.

Paragraph ten provides that—

"The party of the first part will * * * defend and protect the party of the second part in the exclusive making, using and vending of the machines * * * against all infringers, licensees, or others, * * * and save the party of the second part harmless from all results of such acts," etc.

In view of this language, it would be a narrow construction, indeed, to hold that this contract was a bare license, granting to the licensee only the right of "exclusion" and immunity from an injunction brought against it by the patentee or owner.

[4] It is not to be presumed that a right so nugatory was the only subject of the contract, under the provisions of which the defendant corporation obligated itself to "immediately proceed to make preparations for beginning * * * the manufacture and sale of the * * * machines, * * *" and to "expend annually the sum of $1,000 for advertising," etc. Walker on Patents, § 297; Herzog v. Heyman, 151 N. Y. 587, 591, 45 N. E. 1127, 56 Am. St. Rep. 646.

It is a maxim of the common law that one, granting a thing, impliedly grants that without which the thing expressly granted would be useless to the grantee. This maxim is as applicable to grants of patent rights as to other species of property. Steam Stone Cutter Co. v. Shortsleeves, 16 Blatch. 381, Fed. Cas. No. 13,334; Brush Electric Co. v. California Electric Light Co., 52 Fed. 945, 960, 3 C. C. A. 368.

Taking the words of the first paragraph of the contract alone, it might be thought that the contract related solely to the Oliver invention, which appears to be only a modification of the Brewington machine; but, as said by the learned judge below:

"Subsequent parts of the contract, down through nine paragraphs, deal with the various steps of beginning and carrying on the business and the royalties to accrue * * * for the manufacture of these machines"

—meaning machines like the one exhibited to defendants' agents in New York, and which was subsequently sent to defendants' factory in Worcester, Mass., together with patterns and drawings essential for their manufacture.

[5] A contract must be construed as a whole and the intention of the parties is to be collected from the entire instrument, and not from detached portions; it being necessary to consider all of its parts in order to determine the meaning of every particular part as well as of the whole. Canal Co. v. Hill, 15 Wall. 94, 21 L. Ed. 64; Pressed Steel Car Co. v. Eastern Ry. Co. of Minn., 121 Fed. 609, 57 C. C. A. 635. So construed, we hold that the "sole and exclusive" right to manufacture and vend the machine exhibited by Oliver in New York to agents of the defendant corporation for the term of the Oliver patent was the material consideration moving the defendants to enter into the contract and engage in the enterprise.

Subject to plaintiff's objection and exception, the court below admitted the Brewington and La Porte patents, and evidence of an expert that the Oliver machines could not be manufactured without infringing on those patents. The letter of December 18, 1919, was also admitted, subject to objection and exception.

[6] The plaintiff claims that, as this is an action brought to recover royalties under the license contract for machines manufactured and sold, evidence of infringement is not admissible. Such appears to be supported by authority. Kinsman v. Parkhurst, 59 U. S. 289, 293, 15 L. Ed. 385; Wilder v. Adams, 3 Woodb. & M. 329, Fed. Cas. No. 17,-647; Consumers' Gas Co. v. American Elec. Construction Co., 50 Fed. 778, 1 C. C. A. 663; Geist v. Stier, 134 Pa. 216, 19 Atl. 505; Potterton v. Condit, 218 Mass. 216, 105 N. E. 443; Bartlett v. Holbrook, 1 Gray, 114.

In the Kinsman Case Mr. Justice Curtis says:

"Having actually received profits from sales of the patented machine, which profits the defendants do not show have been or are in any way liable to be affected by the invalidity of the patent, its validity is immaterial. Moreover, we think the defendants are estopped from alleging that invalidity. They have made and sold these machines under the complainant's title and for his account, and they can no more be allowed to deny that title and retain the profits to their own use, than an agent, who has collected a debt for his principal, can insist on keeping the money, upon an allegation that the debt was not justly due."

The present case is plainly distinguishable from cases wherein the licensee has enjoyed all the privileges under his license contract for its entire term, and then withholds payment of the royalties, alleging invalidity of the patent.

A distinction is also made as to evidence admissible to show a failure of consideration in a suit to recover the purchase price for a patent right and evidence admissible as a defense in a suit to recover royalties.

In the former, evidence of the invalidity of the patent is generally admitted in the state of Massachusetts. Bliss v. Negus, 8 Mass. 46;

Dickinson v. Hall, 14 Pick. 217, 25 Am. Dec. 390; Bierce v. Stocking, 11 Gray, 174; Lester v. Palmer, 4 Allen, 145; Nash v. Lull, 102 Mass. 60, 3 Am. Rep. 435. See, also, Pratt v. Paris Gaslight & Coke Co., 168 U. S. 255, 18 Sup. Ct. 62, 42 L. Ed. 458, and cases cited, and Croninger v. Paige, 48 Wis. 229.

But, in actions for the recovery of royalties, such evidence is usually inadmissible upon the principle above quoted from the Kinsman Case. McKay v. Smith (C. C.) 39 Fed. 556 (Dist. Mass.); Marston v. Swett, 66 N. Y. 206, 23 Am. Rep. 43; Hyatt v. Ingalls, 124 N. Y. 93, 104, 26 N. E. 285; Saltus v. Belford Co., 133 N. Y. 499, 31 N. E. 518.

We are, however, content to rest the result in the present case upon the opinion of Judge Lowell in the case of White v. Lee (C. C.) 14 Fed. 789, 791 (Dist. Mass.), wherein he says, referring to cases cited:

"These cases point to the true distinction, however difficult its application may sometimes be, that something corresponding to eviction must be proved if a licensee would defend against an action for royalties"

—by attacking the validity of the patent. Marston v. Swett, 82 N. Y. 526, 534; Herzog v. Heyman,. 151 N. Y. 587, 45 N. E. 1127, 56 Am. St. Rep. 646; Potterton v. Condit, 218 Mass. 216, 105 N. E. 443.

[7] The Brewington and La Porte patents; the testimony of the expert taken in connection with plaintiff's financial condition; the letter of Phillip, Sawyer, Rice & Kennedy, attorneys for Crown Cork & Seal Company (Defendant's Exhibit 1), and the letter of December 18, 1919, ante, were admissible to show a breach of the contract and a substantial eviction, and the evidence sustains the finding of the learned trial judge that the defendant was fully justified in refusing to further proceed with the enterprise. He has described the situation in apt language in his memorandum decision, wherein he says:

"The plaintiff is in the position of having contracted the defendant into a fairly expensive undertaking in reliance upon plaintiff's agreement to protect the defendant in the exclusive right to make these machines, when it could not give such exclusive right, and it is now seeking in a court of equity some $10,000 in money and additional patent rights, although itself in default. I have heard no case cited, binding upon me, which as matter of law leads to the conclusion that a concern circumstanced as this defendant was, with such a contract as this and not a mere. naked license to use a described invention or patent, is bound to involve itself in a maze of expensive and apparently hopeless litigation with a concern not a party in this case—the Crown Cork & Seal Company—before it can claim, in a court of equity, protection under such a contract as I have been discussing. * * * Certainly it would be a feeble and futile conclusion for a court of equity to say that, when it is apparent from the admission of the plaintiff's learned counsel, as well as from the evidence of a competent and honest witness produced by the defendants, that the patent situation is such that sound-thinking business men would not think of adopting any other course than that which was indicated by the plaintiff's counsel's own letter—that the courts should be loaded with litigation with the Crown Cork & Seal Company before the rights of the parties under this contract can be worked out. If that is the law, some other court may lay it down; I will not rule it to be law until some court controlling over my action determines it to be law."

The plaintiff contracted to "defend and protect the defendant in the exclusive making, using, and vending of the machines * * * against all infringers, licensees *and others.*" As to "others" it has

failed, and there is a consequent breach of a material provision in the contract. We therefore hold that the defendant is entitled to relief under its counterclaim. The only remaining question relates to the form of the decree.

[8] It appears that the defendant manufactured and sold 40 machines under its license contract. It does not appear that any claim for damages has ever been pressed against it by the Crown Cork & Seal Company, or that such a claim is likely to be pressed. Upon the principle that the defendant cannot escape payment of royalties while it continues in the enjoyment of its license, we hold that the decree of the District Court should be modified to the extent of permitting the plaintiff to retain its bill for an accounting of the amount due for royalties, that the defendant may have an accounting for damages under its counterclaim, and that the amounts so found due the several parties be set off against each other, and judgment rendered for the balance.

The improvement patents may be ordered into the custody of the clerk of court to await the trial of the question of damages. If the royalties are sufficient to satisfy the damages sustained by the defendant, the improvement patents should be assigned to the plaintiffs. If not, they should be disposed of, and the proceeds applied to satisfy the balance due the defendant.

With these modifications, the decree of the District Court is affirmed, without costs to either party, and the case is remanded to the District Court, for further action not inconsistent with this opinion.