### WOOD COUNTY GROCER CO. v. FRAZER.

### In re NEBRASKA-IOWA MERCANTILE CO.

(Circuit Court of Appeals, Eighth Circuit. October 26, 1922.)

Nos. 6052-6055.

1. **Bankruptcy** ⊂⊃467—**Admission of incompetent evidence immaterial.**
   Admission of incompetent evidence on hearing of a claim before a referee in bankruptcy is immaterial; the presumption being that it was not considered, and the matter being heard de novo on appeal.

2. **Contracts** ⊂⊃10(4)—**For sale of sugar held not unilateral.**
   Contracts for sale of sugar by bankrupt to claimants for future delivery fixed a minimum price at which claimants were bound to accept the sugar and a maximum price, which was not to be exceeded. If the price fixed by bankrupt at time for delivery exceeded the minimum, acceptance by claimants was optional. Each claimant made an advance payment,

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to be returned if delivery was not made in accordance with the contract. Delivery was tendered at the minimum price and refused by claimants. *Held*, that the contracts were enforceable against bankrupt at the maximum price and that claimants could not recover the advances on the ground that they were void as unilateral.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

In the matter of the Nebraska-Iowa Mercantile Company, bankrupt. From orders disallowing claims of the Wood County Grocer Company, the Twin City Wholesale Grocer Company, the Des Moines Wholesale Grocer Company, and Fred H. Brown, claimants separately appeal. Affirmed.

Joseph B. Fradenburg and Alvin F. Johnson, both of Omaha, Neb. (Harley G. Moorhead, John A. Rine, and Francis P. Matthews, all of Omaha, Neb., on the brief), for appellants.

Alfred C. Munger, of Omaha, Neb. (Raymond M. Crossman, of Omaha, Neb., on the brief), for appellee.

Before LEWIS and KENYON, Circuit Judges, and YOUMANS, District Judge.

YOUMANS, District Judge. In each of the four appeals there was presented for allowance to the referee a claim against the Nebraska-Iowa Mercantile Company, a bankrupt, for money paid by each of appellants to the Nebraska-Iowa Mercantile Company prior to bankruptcy upon separate contracts entered into between each of appellants and the Nebraska-Iowa Mercantile Company. The four contracts were for the purchase of sugar by each of appellants from the Nebraska-Iowa Mercantile Company and are similar in their terms. They differ only in the quantity of sugar purchased. Since the questions to be considered are the same in each case, it will be necessary to consider but one of the contracts. In the case of Wood County Grocer Company the contract is as follows:

"This agreement, made and entered into this 21st day of May, 1920, by and between the Nebraska-Iowa Mercantile Company, a corporation of the state of Nebraska, party of the first part, and Wood County Grocer Company of Grand Rapids, Wis., party of the second part, witnesseth:

"Whereas, the party of the first part has recently contracted for the delivery of a large quantity of beet granulated sugar within a period of three (3) months after October 15, 1920; and

"Whereas, the undersigned party of the second part agrees to purchase from the party of the first part two thousand one hundred (100) pound sacks of standard refined beet sugar under the following terms and conditions:

"Now, therefore, in consideration of the promises hereinafter made by said party of the second part, and the advance payment of five dollars ($5.00) per bag in cash to the party of the first part, the receipt of which is hereby acknowledged, the party of the second part agrees to purchase 2,000 bags of said beet sugar and to pay for same when notified by party of the first part that said beet sugar is ready for delivery to party of the second part; the additional payment consisting of the balance due over and above the five dollars ($5.00) herein advanced on said beet sugar.

"It is understood and agreed that the price of said beet sugar shall not be less than $16.12 f. o. b. Omaha, nor more than $22.12 f. o. b. Omaha; party of the second part agreeing to accept said beet sugar in any event at the minimum price of $16.12 and pay for same, but in case party of the first part

should find it necessary to ask party of the second part to pay more than the minimum price herein shown, then said price shall be optional with party of the second part, and said party of the second part need not accept shipment of sugar.

"It is further understood that the party of the second part shall be notified of price to be charged by party of the first part on the first day of each two-week period approximately starting with October 15, 1920, and ending three (3) months thereafter, and should party of the second part elect not to accept said sugar, the advance payment of five dollars ($5.00) per bag, acknowledged herein, will be returned to him less the necessary cost of resale as herein provided; i. e., party of the second part herein shall be bound to party of the first part to pay not to exceed three and six-tenths (3.6) cents per bag for the actual commission, cost, and expense of resale of said sugar, the refinery from which said sugar is purchased undertaking and agreeing that it will so resell said sugar.

"In so far as the price is to be made approximately each two weeks, the five dollars ($5.00) per bag will only be returned to party of the second part, should he elect not to accept the sugar, on the proportionate amount of sugar which he would otherwise receive in that particular two-week period; i. e., approximately one-sixth of his contract.

"It is understood and agreed that party of the first part is being properly indemnified in connection with the carrying out of the terms of this contract, and that it hereby guarantees to the party of the second part that it will carry out fully the terms of this agreement. If for any reason beyond the control of the party of the first part the refinery should not deliver this sugar, as per agreement, then the party of the second part shall be entitled to receive back the money herein advanced, without deduction or interest thereon. It is also understood that this contract which the party of the first part has with the beet refinery contemplates a delivery of six (6) equal shipments commencing about October 15, 1920, said shipments being about two (2) weeks apart.

"It is mutually agreed that prices herein, both minimum and maximum, are subject to any changes of freight rates prior to the completion of this contract. This contract is made and entered into with the express understanding and agreement that the terms hereof shall be subject to all governmental regulations now existing or that may be promulgated during the life of this contract.

"It is understood that the party of the second part shall receive six per cent. (6%) interest on the advance payment, as is herein acknowledged from the 21st day of May until this contract is completed. It is also understood that this contract and agreement shall be binding upon the heirs, executors, administrators, successors, and assigns of both parties hereto.

"Executed in duplicate this 21st day of May, 1920."

After the contracts were executed and the cash payments made the Nebraska-Iowa Mercantile Company went into bankruptcy and William C. Frazer was elected its trustee. The claim of each appellant is for the cash payment of $5 per bag of sugar purchased, but not delivered. The claim of the Wood County Grocer Company may be taken as representative of the claims of the four appellants. The claim of the Wood County Grocer Company is stated in its amended petition as follows:

"Comes now the Wood County Grocer Company and shows the court that it is engaged in the wholesale grocery business in the city of Grand Rapids, Wis.; that the bankrupt herein was engaged in the wholesale grocery business in the city of Omaha, Douglas county, Neb., at all times hereinafter mentioned and was a corporation organized under and existing by virtue of the laws of the state of Nebraska; that on the 21st day of May, 1920, said petitioner herein signed a written document, a copy of which is attached hereto and marked 'Exhibit A'; that said written document was duly signed by the bankrupt herein; that shortly prior to the time of the signing of said docu-

ment this petitioner deposited with said bankrupt the sum of ten thousand dollars ($10,000) pursuant to the terms of said written document. This petitioner further alleges that said written document did not constitute a contract of any kind or nature by and between this petitioner and the Nebraska-Iowa Mercantile Company, for the reason that said pretended contract was unilateral, in that it imposed no duties or obligations of any kind or nature upon the Nebraska-Iowa Mercantile Company, the bankrupt herein, and that said pretended contract was and is absolutely void for said reason, and that the money deposited with the Nebraska-Iowa Mercantile Company under and by virtue of the terms of said pretended contract did not pass any title in said funds to the said Nebraska-Iowa Mercantile Company, but that title to said funds remained in and is now solely and wholly in the petitioner herein."

There were introduced in evidence in each case a contract between the Nebraska-Iowa Mercantile Company and the Cullen Brokerage Company, and a contract between the Beet Growers' Sugar Company and the Cullen Brokerage Company. One of the errors assigned is the admission of these two contracts, because no connection is shown between them and the contracts made by appellants, respectively. The referee made findings of fact and conclusions of law. Upon review by the District Court, all of the findings of fact and conclusions of law of the referee were sustained.

[1] We think the admission of the two contracts between the Cullen Brokerage Company and the Nebraska-Iowa Mercantile Company and the Beet Growers' Sugar Company and the Cullen Brokerage Company was error. But, independently of those two contracts, we think each of the four contracts, respectively, of the appellants, should as a question of law receive the interpretation put upon them by the referee and trial judge. The question of the admissibility of the Cullen Brokerage Company contracts is therefore immaterial. Victory Bottle Capping Machinery Co. v. O. & J. Machinery Co. (C. C. A.) 280 Fed. 753. The evidence is all in the record and the hearing in this court is de novo. Therefore only such testimony will be considered here as is competent. Unkle et al. v. Wills et al. (C. C. A.) 281 Fed. 29.

[2] The contracts in these cases provided for a maximum price and a minimum price for the sugar to be delivered under the contracts. Each contract contained this provision:

"In case party of the first part should find it necessary to ask party of the second part to pay more than the minimum price herein shown, then said price shall be optional with the party of the second part, and said party of the second part need not accept shipment of sugar."

The contention of appellants is that there was no obligation on the part of the Nebraska-Iowa Mercantile Company to fulfill the contract. The contract contains this provision:

"It is understood and agreed that party of the first part is being properly indemnified in connection with the carrying out of the terms of this contract and that it hereby guarantees to the party of the second part that it will carry out fully the terms of this agreement."

The contract could have been enforced by the Nebraska-Iowa Mercantile Company in any event at the minimum price. It could have been enforced by the appellants in any event at the maximum price. The testimony shows that the sugar called for in the four contracts was actually tendered by the Nebraska-Iowa Mercantile Company at

the minimum price and was refused by each of the appellants. At that time the price of sugar had fallen below the minimum price named in the contracts. This was doubtless the reason why the appellants would not accept it. They adopted the view that the contracts were not enforceable, which view we regard as untenable. If the Nebraska-Iowa Mercantile Company should have asked more than the minimum price, and appellants should have been willing to take the sugar at some price greater than the minimum, then it might have been necessary to introduce parol testimony. That, however, would not have affected the liability. It would have affected only the extent of the liability.

The decree in each case was right, and should be affirmed. It is so ordered.