### WHITE and others *v.* LEE.

*(Circuit Court, D. Massachusetts.  January 20, 1882.)*

1. PATENTS FOR INVENTIONS—PATENTABLE DIFFERENCES.

   In a patent for an improvement on shoe-tips, the fact that one takes twice as much sole leather as the other is not of itself a patentable difference.

2. SAME—LICENSE FEES—SUIT FOR ROYALTIES.

   In a suit by a patentee against a licensee for license fees, for the use of a patented improvement, something corresponding to an eviction of the licensee must be pleaded and proved if he would defend against an action for royalties.

3. SAME—IMPROVEMENTS IN SHOE-TIPS—VAMPS DISTINGUISHABLE.

   Where plaintiffs' claim must be construed as a "shortened vamp,"—that, is a vamp which ends substantially where the box-toe begins, as the means of uniting the box toe and tip to the upper, and defendant's vamp is carried for the full length over the toe and lasted with the sole, it cannot be considered the use of plaintiff's shortened vamps.

*James E. Maynadier,* for complainants.

*George L. Roberts,* for defendant.

LOWELL, C. J.  The plaintiffs entered into a written contract with the defendant, by which they gave him a license to use the improvements contained in two certain patents belonging to them, of which Hugh White, one of the plaintiffs, was the inventor. Both patents were for improvements in shoe-tips; both have been reissued, and are in the record. This bill is brought in respect to one of them, No. 190,655, issued May 8, 1877, and reissued January 7, 1879, as

No. 8,536. The case, which has been before the court on matters of pleading, (3 FED. REP. 222; 4 FED. REP. 916,) now comes up for final disposition. The contract provided, among other things, that the defendant should pay 10 cents for each pair of shoes which he should make containing the improvements, or either of them, or any material part thereof, but he might buy of the plaintiffs certain stamps for one cent each, and one stamp affixed to each pair of shoes should be a performance of this condition.

One of the defendant's agreements was: "He will not in any way contest the validity of said patents, or either of them, or any reissue or renewal thereof, nor the sufficiency of the specifications, or the validity of the licensor's title, nor the fact of his infringement in the manufacture and sale of said shoes." One of the mutual stipulations was: "In case of the reissue of said patent, the grant herein shall be good under said reissue, and the foregoing stipulations and agreements, on the part of the respective parties, shall be binding upon them in the same manner and to the same extent as though such reissue had never been obtained."

I intimated on a former occasion that the stipulation not to contest the fact of infringement was insensible and repugnant, inasmuch as the agreement is only to pay for such shoes as embody the invention, or some material part thereof, and both counsel agree that the question of infringement, or what would be infringement in a patent case, is open.

The defendant has introduced evidence tending to prove that the reissue is void for several reasons, and that the original patent, No. 190,655, was void for want of novelty; and there certainly is a very striking likeness between the shoe-tip claimed in this second patent and one which was described and drawn, but not claimed, in the first, No. 159,991. The patentee himself, (page 183,) though he says there is a vast difference between them, can point out none, except that "one takes twice as much sole leather as the other," which is not, of itself, a patentable difference.

The question has been argued whether the defendant can resist an action for license fees, under a contract, by proving that the patent is void. In his very thorough brief the defendant cites all the important cases; and they in a cursory examination seem to present a difference of opinion, which on a more careful study will be found to disappear. Many of the decisions treat a licensor as a landlord, and a licensee as his tenant, who cannot dispute the title so long as he has the occupancy of the premises. Many of the cases, such as

*Bowman* v. *Taylor*, 2 Adol. & E. 278; *Smith* v. *Scott*, 6 C. B. (N. S.) 771; *Wilder* v. *Adams*, 2 Wood. & M. 329, are actions at law, and turn upon the effect of a recital or covenant in a sealed instrument. The agreement in this case is not under seal, and this is not an action at law.

Other cases state the general doctrine in a somewhat absolute and general way, hardly admitting exceptions. See *Crossley* v. *Dixon*, 10 H. L. Cas. 293; *Clark* v. *Adie*, 2 App. Cas. 423. On the other hand, there are cases in the United States which seem to hold that the invalidity of the patent may always be proved, such as *Harlow* v. *Putnam*, 124 Mass. 553. But these were cases on either side which required no nice distinctions. The law is, I think, that a plea or answer that the patent is void, is not, of itself, a sufficient defense, but that evidence of what may be called an eviction is such defense. The difficulty is to ascertain what amounts to an eviction in a patent case. It is easily discovered whether a tenant of a certain parcel of land has or has not been evicted; but, if a patent is void, still the licensee may have had all the benefit of a valid patent, because his exclusive title may never have been disputed. In *Lawes* v. *Purser*, 6 El. & Bl. 930, 932, the counsel for the plaintiff admitted that if every one had publicly used the patented invention, that might be equivalent to an eviction; but contended that a simple plea that the patent was void might mean merely that the pleader, when he began to draw his plea, had discovered a technical flaw which no one else had thought of; and the judgment pursued this exact line of reasoning. In a case in Massachusetts, the defendants, who were licensees, and had used the patent to keep off competition, were said by THOMAS, J., to have had all the benefit of a valid patent. *Bartlett* v. *Holbrook*, 1 Gray, 114. In New York, in a case which was twice brought before the court of appeals, it was held— *First*, that mere invalidity of the patent was not a defense; and, *second*, that a repeal of the patent was a defense. *Marston* v. *Swett*, 66 N. Y. 206; S. C. 82 N. Y. 526. These cases point to the true distinction, however difficult its application may sometimes be, that something corresponding to eviction must be proved if a licensee would defend against an action for royalties.

In the present case I do not see any evidence that the defendant, if he practices the invention, has been "evicted," either by competition or otherwise, in such a way as to afford a defense, in face of his express stipulation not to set up the invalidity of the patent, supposing that to be equivalent to the estoppel which the law implies, which is the most favorable view for the defendant.

I do not find, however, that he has practiced the invention. The only claim in controversy is the first of the reissue: "A boot or shoe provided with an outside box-toe and tip in one piece, made from sole leather, separate from the sole, and united to upper and sole, substantially as described."

The description in the specification, the state of the art, and the history of the grant of the patent, make it necessary to construe this claim as including a "shortened vamp"—that is, a vamp which ends substantially where the box-toe begins—as the means of uniting the box-toe and tip to the upper. This is the combination which was described and patented at first, and it is what the first claim must now mean or it is void. I do not consider the defendant's vamp a shortened vamp in this sense; it is carried for the full length over the toe and lasted with the sole; stock is saved by rounding off the the corners, but not in the direction of the length of the vamp; and the plaintiffs' very narrow claim will not admit of calling this vamp an equivalent for their shortened vamp.

Bill dismissed, with costs.