McKAY *v.* SMITH *et al.*

(*Circuit Court, D. Massachusetts.* August 2, 1889.)

PATENTS FOR INVENTIONS—LICENSE.

It is no defense to a suit against a licensee of a patented machine that the licensor has sold or leased similar machines to other persons for a less price, when there was no stipulation in the license that he would not do so.

In Equity.

Bill by Gordon McKay, trustee, to recover license fees for use of a patented machine from Frank W. Smith and others.

*J. J. Myers,* for complainant.

*P. E. Tucker* and *C. A. Taber,* for defendants.

COLT, J. The complainant in this suit seeks to recover of the defendants certain license fees for the use of a machine known as the "McKay Sewing-Machine." The machine is for uniting the soles of boots and shoes to their vamps or uppers, and embodies in its construction several patents. The lease bears date January 23, 1878, and it terminated September 6, 1887, or at the expiration of the youngest patent used in the machine. *McKay v. Mace,* 23 Fed. Rep. 76. The plaintiff association issued many licenses of the same kind as that taken by the defendants. Upon the taking out of a license a certain sum of money was paid, either by way of expenses for putting up the machine, or on account of its cost. By the terms of the license the licensee was to pay the sum of 10 cents for each and every pair of shoes made by aid of the machine, or, instead thereof, he might purchase and affix a certain stamp to each pair of shoes. The present machine was originally licensed by the plaintiff to Prichard, Smith & Co. In January, 1878, a new firm was formed, comprising the present defendants, and subsequently the original lease was surrendered to the plaintiff, and a new one issued to the new firm. For this license, and some other machinery, the defendants paid $425 to the old firm.

Several defenses were set up in the answer, but at the present hearing the main ground relied upon is the eviction of the defendants by the acts of the plaintiff. The principal act complained of as constituting an eviction is as follows: In the spring of 1881, for certain reasons which it is unnecessary to enter into, the McKay association, represented by the plaintiff, determined after August 14th of that year, to exact no more royalties for their machines, but to sell them to their licensees, or to strangers, for a gross sum of $350 for a new and $250 for an old machine, which were about the same amounts the original lessees paid for the expenses incidental to setting up their machines. This was called a commutation of royalties. This course of action was determined upon after consultation between the plaintiff association and many of the leading manufacturers who had licenses, and the proposition has been accepted by most of the licensees. It is contended by the defendants that

this action on the part of the McKay association put strangers on a more advantageous footing than themselves with respect to the patents covered by their license, because strangers could buy a machine upon the payment of the same sum which they originally paid, and use it without the payment of any royalty. The broad ground is taken that a licensor, independent of any express covenants in the license, has no right to do any act which will impair the licensee's enjoyment of the monopoly granted by the license; that the licensee has a vested interest in the monopoly which the licensor is bound to respect, and, it may be, to defend, and that if the licensor does any act whereby the monopoly is injuriously affected, such as granting other licenses for a less royalty, the licensee is relieved from the further payment of license fees under his license.

I do not understand that the doctrine of eviction, as between licensor and licensee, has ever been pressed so far as this, and I find no case which supports the position of the defendants. It has been held that where a patent has been repealed, or where a licensee is enjoined from acting under a license at the suit of the owner of a senior patent, there is an eviction. Walk. Pat. § 307; *Marston* v. *Swett*, 66 N. Y. 206, 82 N. Y. 526; *Iron Works* v. *Newhall*, 34 Conn. 67. It was admitted by counsel for the plaintiff in *Lawes* v. *Purser*, 6 El. & Bl. 930, 932, that, if every one had publicly used the patented invention, that might amount to an eviction, and Walker, in the section cited, says that an eviction will probably be held to occur wherever the patentee is defied by unlicensed persons so extensively and so successfully as to deprive the licensees of the benefit of his share in the exclusive right which it was supposed to secure. Whether the general public use of a patented invention, in the absence of any covenant in the lease that the licensor will prosecute infringers, amounts to an eviction, has not been, so far as I have been able to examine the cases, judicially determined; and, upon the facts before me in this case, it is not necessary to decide this question. The rule, however, is now well established that the mere invalidity of the patent is not a sufficient defense to the payment of royalties under a license, because the licensee may still continue to enjoy all the benefits of a valid patent. *Birdsall* v. *Perego*, 5 Blatchf. 251; *Marsh* v. *Dodge*, 4 Hun, 278; *Bartlett* v. *Holbrook*, 1 Gray, 114; *Marston* v. *Swett*, 66 N. Y. 206, 82 N. Y. 526. In *White* v. *Lee*, 14 Fed. Rep. 789, the defendant sought to resist an action for license fees on the ground that the patent was void. In his opinion in that case Judge Lowell carefully reviews the authorities. His conclusion is that the mere invalidity of the patent is not a sufficient defense, but "that something corresponding to eviction must be proved if a licensee would defend against an action for royalties." In other words, it is not enough for a licensee to prove that the patent is void, but he must also show that he has been deprived of the benefits secured to him under his license. It would seem, therefore, from the cases, that eviction may be shown, where the patent has been repealed, or where the licensee has been enjoined from acting under the license at the suit of the owner of a senior patent, or

where he can show that he has been deprived of the benefits of his license under a patent which is void. In these instances it may be said that the subject-matter of the contract has been in substance destroyed, and therefore the payment of royalties should cease. A license is the grant of a right to manufacture, use, or sell the thing patented, but, outside of the terms of the contract, I do not see that there is any implied covenant that the licensor will protect the licensee in the full enjoyment of the monopoly. If a licensee, as in this case, enters into an agreement to pay royalties for the use of a patented machine, and attaches no such conditions to the contract as that the licensor will not license to others for a less royalty, or that the licensor will prosecute infringers, it is difficult to discover upon what principle the licensor is bound by any such conditions. There is no implied covenant in a license that the licensor will protect the licensee against competition. In the present case more than 1,000 licenses have been issued to use the McKay machine. By so doing the licensor creates competition. But it is not contended that this relieves the licensee from the payment of royalties; and with equal reason I think that a licensor may license others to use a patented machine at a less price, in the absence of any express agreement in the license, the same as a landlord may lease one store in a block for a less rental than another. It is a question of contract. Admitting that there is an analogy between the case of landlord and tenant and that of licensor and licensee under a patent, I do not see how that helps the defendants upon the facts before me in this suit. What was granted to the defendants was not the protection of the monopoly covered by the license, but the right to use a machine which embodies certain patents. If they were deprived of the use of the machine by the act of the licensor, they might set up eviction, but they cannot continue to use the machine and refuse to pay the royalty due under their contract. When we begin to import implied covenants into a license the problem meets us of where we are to begin and where to end. Upon the theory of the defendants in this case, it would seem that any act or omission on the part of a licensor which impairs the benefit to be derived from the use of the patents contained in the license amounts to an eviction, and relieves the licensee from further payment of royalties, and at the same time allows him to go on and use the patents. Such a doctrine as this, it seems to me, is manifestly unsound, and would lead to much confusion in this important branch of the patent law. The rule of *caveat emptor* should be invoked here as elsewhere; and, if the licensee expects protection, the terms and the degree of such protection should form part of his contract. It is quite common in licenses to provide that the licensor shall not grant future licenses for a less royalty without allowing prior licensees the benefit of any such reduction. In the present case, there being no express stipulation in the license that the complainant should not lease or sell the machine to others for a less price, I think the defendants should account to the complainant for the amount of unpaid royalties due under their license upon the shoes manufactured by them on the McKay machine. Decree for complainant.