ROSS v. FULLER & WARREN CO.

(Circuit Court, N. D. New York. December 27, 1900.)

1. PATENTS—ROYALTY UNDER LICENSE—FAILURE OF CONSIDERATION.

Where the decision in a suit for infringement brought by a licensee in effect holds the patent void in its entirety because of lack of invention in the article patented, it absolves the licensee from the further payment of royalties required by his contract, although but one of several claims of the patent was directly in issue in the suit.

2. SAME—USE OF IMPROVEMENTS BY LICENSEE.

The mere acquiescence by a patentee in the use by his licensee of improvements on the patented device covered by a subsequent patent does not bind the licensee to pay the same royalty for the improvements that is stipulated under the foundation patent, after such patent has been adjudged invalid.

At Law. Action by patentee to recover royalties from licensee. Tried by the court.

On the 23d of September, 1887, the parties made an agreement by which the plaintiff, who was the owner of letters patent for a sanitary privy furnace, granted to the defendant an exclusive license to make, use and sell the supposed invention throughout certain specified territory, during the life of the patent. The defendant agreed to pay the plaintiff a royalty of $2.50 for each seat of the furnace used and sold. The defendant further agreed to make up and return to the plaintiff at the end of each 60 days a correct report of the sales of all the furnaces and seats used and sold and at such times to pay the amounts due for royalties. On the 1st of January, 1889, the parties entered into a second agreement whereby the territory assigned to the defendant was materially extended. No other provision affecting the present controversy is contained in the second contract. The first cause of action is based upon an alleged breach of those two written agreements. On the 29th of September, 1891, letters patent were granted to the plaintiff for improvements in apparatus shown in the previous patent. These improvements were used by the defendant with the consent of the plaintiff. It is alleged that the conduct of the defendant in accepting the benefits of the second patent establishes an implied agreement upon its part to pay the stipulated royalty during the life of the patent. The second cause of action is based upon this alleged implied contract. A third cause of action, based upon letters patent granted by the dominion of Canada, was withdrawn at the trial. The defendant continued to pay royalties under the written agreements until September 15, 1892, when a decree was entered by the circuit court of the United States for the district of Massachu-

setts adjudging the principal claim of the patent void for lack of invention. This decree was affirmed January 24, 1896. Fuller & Warren Co. v. Town of Arlington (C. C.) 54 Fed. 166, affirmed in 18 C. C. A. 402, 71 Fed. 965. The amount of royalty, including interest, which has accrued since the last payment by the defendant is $9,155.49. The defense is that since the decision in the Arlington Case invalidating the patent there has been no consideration for the royalties and, therefore, that no obligation rests upon the defendant to pay them; in short, that the contracts are null and void. The answer of the plaintiff to this defense is that the issue in the Arlington Case was confined by the bill to "the first clause of the claim" of the patent and that the other three claims remained unaffected by the decision. The Arlington Case was presented by able counsel well versed in patent law. An examination of the record shows that every contention favorable to the patent was pressed upon the consideration of the court. That the court regarded the patent as wholly without merit is manifest. In the circuit court the opinion contains the following: "For this pit Ross substituted a metallic vault, open at both ends; at one end a flue; at the opposite end a fire chamber. The fecal matter falls from the seats upon a perforated platform, which separates the solid portion. When desirable to remove the contents, a fire is built, the piles of matter are rapidly dried, mixed with some combustible matter and burned. * * * When the case comes down to the concise form above given, it seems to suggest at once to any ordinary, intelligent mind, the common process of heating, drying, baking or burning, with such common changes of details as the daily occurrences of life constantly require, and nothing more. * * * If the complainant had any claim to any part of the suggestion or idea of first drying, and then consuming fecal matter as a sanitary measure, this might show an inventive mind within the meaning of the law. But its success in marketing a fireproof vault, with a grate and flue attached, for drying and consuming fecal matter, even though the vault is traversed by a perforated platform in order to make two currents of heated air or to separate the solid portions from the liquid, is not the result of inventive genius, but of the mechanical skill of complainant in meeting the ordinary emergencies of heating, drying, baking or consuming by fire, for either domestic or public uses." In the circuit court of appeals the patent was treated with even less respect. The court say: "Looking at the specification, we find nothing but an incombustible bottom to the ordinary vault, with a similar cover in which the matter to be destroyed is dropped. The solid matter is drained by dropping upon a grating, or a perforated plate. At one end of this vault is space for building and maintaining a fire; at the other end, a chimney or flue for supporting the necessary draft to sustain the combustion of the fire, and to carry off vapors and odors developed or set free in the process of drying. This is the whole thing. * * * The whole alleged invention, therefore, is nothing more than a form of hot-air drying chamber, in which, because of the nature of the substance to be dried, it is admissible to have the fire, with its smoke and gas, in the same chamber with that substance. We see no invention whatever in the device."

V. H. Lockwood, for plaintiff.

N. Davenport and George B. Wellington, for defendant.

COXE, District Judge (after stating the facts). There can be little doubt that if the Massachusetts decree had in terms declared each and all of the claims of the patent void it would have been a complete defense to the cause of action founded upon the written agreements to pay royalty. This proposition is amply sustained by authority and was not controverted at the trial. Herzog v. Heyman, 151 N. Y. 587, 45 N. E. 1127; Marston v. Swett, 82 N. Y. 526; White v. Lee (C. C.) 14 Fed. 789, 791; McKay v. Smith (C. C.) 39 Fed. 556; Walk. Pat. § 307.

It is perfectly plain that in the Massachusetts case the court regarded the patent as utterly devoid of merit and the patented com-

bination without a vestige of invention. The infringing structure was so similar to the patented apparatus that, after the dismissal of the bill, the attempt to hold anyone as an infringer, no matter what structure he used, was hopeless. The practical result of the decision was to destroy the exclusive right of the Fuller & Warren Company and place it on a par with all other persons who chose to make and sell the apparatus. The field which previously had been the exclusive preserve of the Fuller & Warren Company was now wide open and the company had no greater right therein than the most irresponsible poacher. In these circumstances the proposition to compel the defendant to pay $9,000 without a dollar's actual consideration is, indeed, a startling one. It is, of course, true that in an action of this character the defendant cannot set up the invalidity of the patent as an original defense; it is also true that where the patent has been examined and construed by a competent tribunal and the parties are not agreed whether it has been declared void as a whole or only in part, it is permissible for the court to examine the record to ascertain the scope of the former decision. Should it then appear that the decree is so sweeping as to amount to "something corresponding to eviction" it is a complete defense to an action for royalties. Again, it is true that where a patent contains several claims, one of the claims may be declared invalid without affecting the validity of the remaining claims. But this depends upon the wording of the decision and of the claims.

Turning to the Ross patent, No. 264,568, it will be found that all the claims are for combinations. The first claim is as follows:

"As an attachment for a privy, a horizontal metallic casing constituting the depository for the fecal matter, and provided with the hinged lids and fire-chamber, substantially as set forth."

The second and third claims, upon which the plaintiff chiefly relies, are for substantially the same combination limited to mechanism shown and described. It is argued that these claims have "the perforated false bottom C" for an element which is, presumably, new, and is not found in the first claim. It will be observed, however, that the first claim is susceptible of a construction making the false bottom an element of the combination as being essential to the horizontal depository, and that the circuit court so construed it. The court says:

"The specifications and claim fail to point out the advantages of the perforated platform and it may be that all relating to it could be omitted without changing the essence of the complainant's description of the pith of its own invention."

And, again, the opinion emphatically states that making a fire-proof vault "even though the vault is traversed by a perforated platform in order to make two currents of heated air or to separate the solid portions from the liquid is not the result of inventive genius." This would seem to dispose of the contention that the specific introduction of the perforated false bottom adds an element of novelty to the second and third claims. In the statement of the invention quoted above from the opinion the perforated platform is specifically pointed out as one of the important elements. Indeed, in both opin-

ions, in the testimony of the expert and in the statement of counsel, every element of the least importance found in any of these claims was referred to as part of the patented apparatus. The combination, whether considered broadly or in connection with the mechanism described, was declared void for want of patentability. It is thought that no intelligent man, after reading the Massachusetts case, would hesitate for a moment to make the Ross furnace in every form suggested by the patent. That he could do so without the least danger of being held in infringement there can be no doubt. Suppose that such a suit had been brought on the second claim against one using the identical form of "perforated false bottom C," shown in the drawing—the Arlington platform not being the exact structure, but an equivalent. Is it possible that the court would listen to a claim of invention in view of the Arlington decision that it required no "inventive genius" to use the perforated platform, but only "the mechanical skill of the patentee in meeting the ordinary emergencies of heating, drying, baking or consuming by fire, for either domestic or public uses"? It is thought not. Another test. Assume that the patentee, after the final decision, had entered a disclaimer of all that the court said he was not entitled to hold, would anything have remained? Were the experiment tried it would probably be found that human ingenuity would be inadequate to discover what of value remained after the subtraction had been made. After a careful examination of the patent, the record and the decisions, the court is convinced that nothing was left of which to predicate invention. Theoretically it may be argued with plausibility that the last three claims were not invalidated, but the practical result of the Arlington decision was death to the first claim and hopeless paralysis to all the others.

It is admitted that there is no written agreement to pay royalties under the subsidiary patent of 1891, and the proof falls far short of establishing an implied agreement to this effect. Most assuredly there is no evidence from which an agreement can be deduced to pay the full amount of the royalty of $2.50 per seat for the use of this patent alone. It seems clear that the plaintiff intended that this patent should be used in connection with the principal patent without additional charge. If he expected to collect royalties for the use of the second patent he should have so stated and fixed the amount. It cannot be said that the mere acquiescence by a patentee in the use of a patent for improvements upon a patented device binds the user to pay the same royalty for the improvements that is stipulated under the foundation patent.

The proposition that the Massachusetts decree was not final until affirmed on appeal cannot be maintained.

Upon the entire case the court is convinced that there was a failure of consideration the moment the patent was declared invalid. The defendant agreed to pay the stipulated royalty in consideration of the monopoly. When deprived of this exclusive privilege by law the defendant occupied no vantage ground over any other manufacturer. The defendant took nothing from the plaintiff, for he had nothing to give. The estate which the parties supposed belonged to

the plaintiff was judicially determined to belong to the public. The defendant should not be compelled to pay a large sum of money for exercising a right, which, after the patent was destroyed, was no longer exclusive, but was free and common to all. The complaint is dismissed.