HAZELTINE RESEARCH, Inc. v. AUTO-
MATIC RADIO MFG. CO., Inc.

Civ. A. No. 6677.

District Court, D. Massachusetts.
April 28, 1948.

494

Roberts, Cushman & Grover and Clarence H. Porter, all of Boston, Mass., and Laurence B. Dodds, of New York City, for plaintiff.

George K. Woodworth, of Boston, Mass., Samuel E. Darby, Jr., Darby & Darby and Floyd H. Crews, all of New York City, for defendant.

FORD, District Judge.

This is an action on a licensing contract under various patents which provides for the payment of royalties by defendant to plaintiff. Plaintiff, alleging nonpayment, seeks a judgment for the minimum annual royalty of $10,000; an accounting to determine any additional sum that may be due; an order that defendant comply with the terms of the contract in other respects, and such other relief as may be just.

Jurisdiction is based on diversity of citizenship, plaintiff being an Illinois corporation (assignee of a Delaware corporation) and defendant a Massachusetts corporation. The matter in controversy exceeds $3,000.

The plaintiff moves for summary judgment under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Numerous affidavits have been filed by plaintiff in support of its motion. Defendant opposes the motion with affidavits, files a counter motion for summary judg-

ment dismissing the action, and supports its motion with affidavits in opposition to which plaintiff has filed further affidavits.

A brief history of prior events will help to illuminate the conflicting claims. Hazeltine Corporation, a Delaware corporation, was organized in 1924 to exploit the invention of the neutrodyne radio circuit as embodied in three patents, and it did so with great success until the circuit became obsolete about 1929, because of the advent of the screen grid tube. In the meantime, through a program of research, it had developed many more patented inventions in the radio field, and by business arrangements acquired others. In 1946, Hazeltine Research, Inc., the plaintiff here, was organized in Illinois as a wholly owned subsidiary of Hazeltine Corporation, and took an assignment of all of the parent corporation's patents, patent applications and licensing contracts. The research program mentioned above is conducted by a third corporation, the Hazeltine Electronics Corporation, also a wholly owned subsidiary of Hazeltine Corporation. All will be referred to as Hazeltine hereafter.

At present, Hazeltine owns or has the right to grant licenses under some 570 patents and 200 patent applications, largely in the field of radio and television. It is, with RCA, Westinghouse, Philco, etc., one of the largest licensors in the radio field. Its mode of operation is to license manufacturers of radio receivers under non-exclusive licenses entitling the manufacturer to the use of any or all of Hazeltine's patents. In return, the manufacturer agrees to pay therefor a fixed percentage of its gross sales of certain enumerated radio equipment. Defendant Automatic Radio Manufacturing Company is such a manufacturer of radio receivers and is licensed by Hazeltine.

Defendant first took a license with plaintiff on October 1, 1935, but did not make payments thereunder. In December 1936, Hazeltine sued for royalties in the Massachusetts Superior Court, Suffolk County, which suit was settled and an interlocutory consent decree entered by which defendant admitted its use and the validity of numerous Hazeltine patents. A new license agreement was made for a period of five years from October 1, 1937, under which the parties operated for some two and one-half years, till February, 1940, when defendant failed to pay royalties. Upon plaintiff's application, the interlocutory consent decree became final on December 3, 1941, a new settlement was made, and a third license contract was drawn as of September 1, 1942, to run ten years from that date, this being the contract involved in the present litigation. Plaintiff waived any right to minimum royalties under the contract until August 30, 1945 because of the war time prohibition against production of civilian radio sets, but renewed its claim thereunder beginning September 1, 1945. Upon refusal of defendant to pay royalties or to make reports required by the contract, plaintiff filed this action on April 9, 1947.

Article III of the contract grants the licensee a "personal, indivisible, non-transferable and non-exclusive license" to manufacture and sell certain equipment such as radio receivers of sound and pictures, phonographs, and motion picture reproduction equipment, under a long list of plaintiff's patents; "the use in each case is limited to use in homes, use for educational purposes and private non-commercial use."

Article IV provides for royalties of 1.05% of the licensee's selling price on certain of the equipment specified in Article III and 2.1% on other such equipment. Section 4 provides for a minimum payment of $10,000 per year in the event royalties calculated as above do not exceed $10,000.

Article V requires the licensee to render monthly reports for the purpose of calculation of royalties, and designates the time and manner of payment.

Under Article VI, licensee agrees to mark all licensed apparatus with the statement: " 'Licensed by Hazeltine Corporation only for use in homes, for educational purpose, and for private, non-commercial use, under one or more of the following patents and under pending applications:' followed by the word 'Patent' and the numbers of the patents which are, in the opinion of Licensor, involved in apparatus of the types licensed hereunder * * *."

In Article VIII, the licensor agrees to "* * * diligently prosecute such suits for infringement of the various patents under which licenses are herein granted as may in its judgment be reasonably necessary and prudent for enforcing those patents and preventing unlicensed competition * * *".

These are the provisions of the contract which are principally involved in this suit.

■ This is an appropriate case for the application of summary procedure under Rule 56. There is no genuine issue as to any material fact, and both parties have moved for summary judgment. The contention of defendant that a genuine issue does arise with respect to certain questions of fact concerning plaintiff's motion is without merit. I have reviewed the pleadings and affidavits and find no specific allegation of facts on personal knowledge required by Rule 56(e). See Engl v. Ætna Life Ins. Co., 2 Cir., 139 F.2d 469, 473; Peckham v. Ronrico Corporation, D. C., 7 F.D.R. 324, 327; cf. Griffin v. Griffin, 327 U.S. 220, 236, 66 S.Ct. 556, 90 L.Ed. 635.

■ The contract was executed in New York; it provides by agreement of the parties that New York law shall govern; and at least part of its performance is due in New York. The Federal District Court sitting in Massachusetts in diversity cases will apply the Massachusetts rules of conflicts of law. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Sampson v. Channell, 1 Cir., 110 F.2d 754, 128 A.L.R. 394. Massachusetts courts determine the validity and interpretation of a contract in accordance with the law of the place where the contract was executed. Adamowski v. Curtiss-Wright Flying Service, Inc., 300 Mass. 281, 15 N.E.2d 467. In so far as it is necessary, I will, therefore, apply New York law. At the same time, it must be remembered that local rules of estoppel to contest the validity of a patent in a suit for royalties cannot override the strong public policy expressed in such federal enactments as the anti-trust laws. It follows that federal law will control the propriety of defenses based on the anti-trust laws. Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 175, 63 S.Ct. 172, 87 L.Ed. 165; Morton Salt Co. v. G.S. Suppiger Co., 314 U.S. 488, 492, 788, 62 S.Ct. 402, 86 L.Ed. 363.

■ The contract involved here is essentially a grant by plaintiff of a privilege to defendant to use any patent or patent application which might be held by plaintiff in consideration for defendant's agreement to pay money. It is different from most license contracts in that payment of royalties does not depend on the use of plaintiff's patents by defendant, but is required regardless of any use by defendant. This is a convenient mode of operation designed by the parties to avoid the necessity of determining whether each type of defendant's product embodies any of the hundred of patents which plaintiff controls. There is nothing inherently illegal in such an arrangement. H-P-M Development Corporation v. Watson-Stillman Co., D.C., 71 F.Supp. 906, 912. And non-use of the patents is not a defense to an action on the contract.

■ The contract requires defendant to pay 1.05% (and in one case 2.1%) of its gross sales of certain specified apparatus, with a minimum of $10,000 per year. Computation in this manner is designed to avoid the difficulties mentioned above. Defendant's contention that this method of computation is a misuse of plaintiff's patents has no merit. This is not an attempt by plaintiff to extend its monopoly to and collect royalties on unpatented articles (see Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A. 1917E, 1187, Am.Cas. 1918a, 959), but a convenient mode of computing the cost to defendant for the privilege of using the patents should defendant desire to make such use. Even where the license contract calls for royalties only when the patent is used, the amount of royalties can be measured by the total price of apparatus embodying unpatented as well as patented items. H-P-M Development Corporation v. Watson-Stillman Co., supra; Pyrene Mfg. Co. v. Urquhart, D. C., 69 F.Supp. 555; American Optical Co. v. New Jersey Optical Co., D. C., 58 F.Supp. 601, 606; International Carbonic Engineering Co. v. Natural Carbonic Products, Inc., D.C., 57 F.Supp. 248; Ohio Citizens Trust

Co. v. Air-way Electric Appliance Corporation, D. C., 56 F.Supp. 1010, 1012.

Defendant urges, on the basis of Pope Mfg. Co. v. Gormully, 144 U.S. 224, 12 S.Ct. 632, 36 L.Ed. 414, that the contract cannot be enforced because defendant has admitted the validity of all of plaintiff's patents in the consent decree in the Massachusetts Court and that an agreement not to set up a defense to any suit is void as against public policy. The short answer to this is that the consent decree is not a part of this contract. The contract represents, on its face, a legitimate business bargain, and is in no way oppressive or unconscionable. The legal effect of the consent decree need not be passed upon in this suit. Furthermore, the defendant does not purport to contest the validity of all plaintiff's patents.

Defendant claims eviction from any right to use plaintiff's patents and failure of consideration in that none are available for use. While eviction may be a good defense to an action for royalties under a license contract (Drackett Chemical Co. v. Chamberlain Co., 6 Cir., 63 F.2d 853; Ross v. Fuller & Warren Co., C. C., 105 F. 510; White v. Lee, C. C., 14 F. 789; Marston v. Swett, 66 N.Y. 206, 23 Am.Rep. 43), defendant has not made any serious effort to show eviction here and could not show it. Even though some of plaintiff's patents admittedly have been held invalid, there is no attempt to show that all or even a substantial number of them are unavailable for the use of defendant. It is quite clear that most of them have not been litigated and are presumptively valid. Radio Corporation of America v. Radio Engineering Laboratories, 293 U.S. 1, 7, 55 S.Ct. 928, 79 L.Ed. 163. Defendant thus gets, by the contract, what it bargained for, namely, the right to use whatever patents are available for use in plaintiff's large collection. It cannot complain that there is a failure of consideration if a particular patent has been invalidated even though it be the only patent he desired to use.

Defendant has made an extensive argument to the effect that the restriction on use which is imposed by the license notice required by Article VI of the contract is illegal in that it constitutes an attempt to extend the monopoly of the patent beyond its legitimate scope; that the imposition of such an illegal restriction is a misuse of the patent which vitiates the license agreement and renders it unenforceable; and it has cited numerous cases in the exegesis of this proposition. The license requires the following notice to be placed on articles manufactured under the license: "Licensed by Hazeltine Corporation only for use in homes, for educational purposes, and for private, non-commercial use, etc. * * *." If we suppose that defendant manufactured and sold a receiver under the license for an authorized use, and that it was purchased by one having notice of the restriction, and the purchaser acquired it for a purpose unauthorized by the license notice (e. g. for commercial use) and used it for such unauthorized purpose, we have the case postulated by the defendant. It is the case expressly left open by the court in General Talking Pictures Corporation v. Western Electric Co., 305 U.S. 124, 125, 59 S.Ct. 116, 83 L.Ed. 81: "Can a patent owner, merely by a 'license notice' attached to a device made under the patent, and sold in the ordinary channels of trade, place an enforceable restriction on the purchaser thereof as to the use to which the purchaser may put the device?" I do not deem it necessary to answer the question here. As between the licensor and licensee, the former can certainly restrict the licensee to manufacture and sales for limited use. General Talking Pictures Corporation v. Western Electric Co., supra. Even if the restriction imposed on a purchaser from the licensee should be invalid, there is no reason for permitting the licensee to escape its contract obligations thereby. If the restriction is invalid, then the article may go to the purchaser free of the restriction, but the contract between the licensor and licensee is not affected. The validity of the restriction should be tested in an action by the licensor against the licensee or the purchaser to enforce the restriction, not in an action on the contract by the licensor against the licensee. If there is any strong public policy against such restrictions, the policy can thus be

498

fully protected by permitting the goods to go into commerce free of the restriction.

 Defendant's most substantial defense is that set forth in paragraph 10 of its answer to the complaint: "That the plaintiff, in an illegal endeavor to eliminate all competition and secure an unlawful monopoly in violation of the antitrust laws of the United States, acquired the approximately 425 United States letters patent and the approximately 120 applications for United States letters patent * * * from its employees * * *" (and from other corporations and persons). If the issue of whether a monopoly existed was relevant to this case, I would not decide. the question on summary procedure, but would require that it be submitted for trial. However, in this case, it is not necessary to decide the question. The license contract involved here is entirely separate from any action of plaintiff to eliminate competition or engage in a monopoly. Assuming, arguendo, it was engaged in an unlawful scheme to maintain a monopoly, the contract here was not an integral part of it. The contract in suit did not help to promote any monopoly plaintiff had established. See American Refining Co. v. Gasoline Products Co., Tex.Civ.App., 294 S.W. 957. The contract here is complete in itself and enforceable without reference to any contract of the plaintiff with others or of any illegal activity on the part of plaintiff in violation of the anti-trust laws. It being itself a valid contract, collateral activities of the plaintiff do not render it unenforceable. Gasoline Products Co. Inc. v. Champlin Refining Co., D. C., 46 F.2d 511, 514; Walker on Patents, Vol. II, Sec. 409, p. 1590, and cases; cf. Radio Corporation of America v. Majestic Distributors, D. C., 53 F.2d 641. (Compare United Shoe Machinery Co. v. La Chapelle, 212 Mass. 467, 99 N.E. 289, Ann.Cas. 1913D, 715, where the contract in issue was held to be an essential means of maintaining the illegal monopoly of plaintiff.) The defense that plaintiff is using its patents to force others, not the defendant, to assign to plaintiff rights under their patents is rejected on the same ground.

 The defenses of fraud and waiver of minimum royalties are rejected as having no basis on the facts set forth. The defense of breach of contract by plaintiff because of failure diligently to prosecute infringers is rejected on the facts reflected in the affidavits. Article VIII only requires plaintiff to prosecute infringers as "may *in its judgment* be reasonably necessary and prudent * * *." (Emphasis mine.) This relieves the court of substituting its judgment for that of the plaintiff. However, the facts indicate that plaintiff has acted diligently in this respect. The remainder of defendant's numerous defenses are rejected as not justified on the undisputed facts.

Plaintiff's motion for summary judgment is granted and it will submit a form of judgment for approval by the court.

Defendant's counter motion for summary judgment dismissing the action is denied.