W. H. WYNNE, JR., v. F. W. ALLEN AND LELAND T. CLARKE, PARTNERS,
T/A MET-L-VENT AWNING COMPANY.

(Filed 1 February, 1957.)

**1. Trial § 55—**

Where the parties waive jury trial and agree to trial by the court, it is preferable that the court make separate findings of fact and conclusions of law rather than render a verdict on issues submitted to itself.

**2. Appeal and Error § 21—**

An exception to a judgment rendered upon a verdict challenges the correctness of the judgment and whether it is supported by the verdict properly interpreted, but cannot affect the verdict.

**3. Trial § 49—**

A motion to set aside the verdict as contrary to the evidence is addressed to the discretion of the court.

**4. Trial § 21½—**

Failure to renew motion to nonsuit at the conclusion of all the evidence waives the question of the sufficiency of the evidence to be submitted to the jury.

**5. Trial § 39—**

The verdict rendered by the trial court upon waiver of trial by jury must be interpreted in the light of the pleadings and evidence, there being no charge to the jury.

**6. Pleadings § 24—**

The issues arise upon the pleadings, and recovery must be based upon the cause alleged.

**7. Patents § 3—**

The royalties paid by patent licensee are compensation or rent for the use of the invention, and the licensing contract creates a relationship analogous to that of landlord and tenant.

**8. Same—**

There is no implied warranty or covenant of quiet enjoyment in the sale or lease of a patent.

**9. Same—**

An eviction which deprives the licensee of the right to enjoy the patent licensed relieves him of the duty of making further payments under the license, but if, notwithstanding that the use of the license is an asserted infringement of a patent of a third person, he continues to recognize the right to use the patent under his license, he is liable for royalties.

**10. Same—**

Where the right of a licensee of a patent to use the patent is terminated by an eviction, the licensee is discharged from liability for royalties there-

after accruing, but is not relieved from liability for royalties that have accrued.

**11. Same—**

Where the licensee voluntarily pays money for the privilege of exercising rights under the licensing contract with full knowledge of all facts which may impose liability to a third person claiming infringement of a prior patent, he cannot, in the absence of an agreement to reimburse, recover the money so paid.

**12. Same—Judgment for recovery of accrued royalties paid held not supported by verdict establishing payment by licensee after knowledge of all facts.**

In this action by the licensor to recover royalties assertedly due under a licensing agreement, the court, under agreement of the parties, rendered the verdict on issues submitted to itself. The verdict, interpreted in the light of the pleadings and evidence, disclosed that defendants paid royalties under the agreement after full knowledge of infringement asserted by a third party, and that defendants elected to continue under the contract and accept its benefits. The pleadings failed to allege any indemnity agreement by the licensor on account of infringement. *Held:* Judgment allowing recovery on defendants' counterclaim for royalties so paid is not supported by the verdict, and a new trial is awarded.

JOHNSON, J., not sitting.

APPEAL by plaintiff from *Sink, E. J.,* Civil Term of MECKLENBURG.

On 24 August 1946 plaintiff, by writing, licensed defendants to manufacture and sell in a defined area ventilated awnings under a patent known as the Houseman patent. The awnings so manufactured were known as "Koolvent." Each awning was to have attached a tag showing it was manufactured under the Houseman patent. The license to manufacture and sell was to run for thirty-eight months with an option to renew. The consideration for the license was a cash payment of $2,000, a further payment of $2,000 on 24 September 1946, plus a royalty of 5% of the gross sales price of any awnings manufactured or sold in the authorized territory. Licensees covenanted to diligently promote the sale of Koolvent awnings by advertisement and otherwise and to pay royalties on a guaranteed minimum sales of $100,000 per annum. Licensees were obligated to report monthly the sales made and to make payments on the sales actually made in excess of the guaranteed minimum.

This action was begun in March 1950. Plaintiff alleged the licensing agreement, that defendants had, pursuant thereto, manufactured ventilated awnings under plaintiff's trade name of Koolvent awnings, that royalty payments had been made on the awnings reported as sold, but the sales as reported did not meet the minimum as guaranteed. Plain-

tiff sought an accounting to determine the sales actually made, and if such accounting showed that the actual sales did not exceed the minimum guaranteed then for the difference between the amount paid and the amount guaranteed to be paid. Plaintiff asserted this difference to be $8,735.31.

Defendants answered, admitting the execution of the licensing agreement and their failure to manufacture and sell and pay royalties on the minimum fixed in the contract. They assert by way of defense to plaintiff's claim and as a counterclaim to recover the amounts paid plaintiff that they were induced to execute the contract by fraudulent representations of plaintiff and because of total failure of consideration. They ask judgment on their counterclaim in the sum of $11,064.24, the sum of the payments made August and September 1946 and the royalties paid monthly beginning in November 1946 and ending in February 1949.

The allegations of fraud and failure of consideration are briefly stated as follows: In August 1946, when negotiations were going on between plaintiff and defendants, a suit was then pending in the Federal courts in Georgia entitled *Matthews v. Koolvent Metal Awning Co.* (reported 158 F. 2d 37) in which it was asserted that awnings manufactured under the Houseman patent infringed on prior patent rights granted Matthews; that the defendant in that action was owned and controlled by plaintiff who falsely and fraudulently represented to defendants that he had the legal right under the Houseman patent to license ventilated awnings; that defendants had no knowledge of the pending litigation and relied upon the representations so made; that it was, in January 1947, adjudged that defendant in that action had infringed the Matthews patent, whereupon plaintiff accepted a personal license to manufacture under the Matthews patent and consented to be bound by an injunction prohibiting him from questioning the infringement of the Matthews patent by the manufacture and sale of Koolvent awnings as licensed in the contract of August 1946, thereby disenabling plaintiff from assisting defendants in the litigation thereafter brought against them by the owners of the Matthews patent. Defendants were advised in April 1947 by the owners of the Matthews patent that the awnings manufactured by them under the contract with plaintiff infringed on the Matthews patent, whereupon defendants notified plaintiff of the claim asserted. Defendants, acting on the advice of plaintiff and in an effort to avoid any claims of infringement by the owners of the Matthews patent, changed to a so-called jammed lug type of construction to prevent the passage of light and air through the roof of the awning. Notwithstanding this change, defendants were, in 1948, sued in the District Court for the Western District of North Carolina by the owners of the Matthews patent and charged with an infringement.

That court held that the original method of construction did infringe, but the jammed lug method did not. Owners of the Matthews patent appealed to the Circuit Court. Defendants paid plaintiff $11,064.62 as shown in their exhibit made a part of the answer.

Following the allegations asserted to show fraud and total failure of consideration as summarized above, defendants aver that if the Circuit Court should reverse the District Court and hold the jammed lug method of construction an infringement, they would be compelled to pay the owners of the Matthews patent damages substantially equivalent to the amount they had already paid plaintiff.

The exhibit attached to and made a part of the answer shows payments for franchise and royalties aggregating $11,062.25. It shows the royalties which accrued each month on account of sales pursuant to the contract of August 1946 and the amounts paid. These payments cover royalties accrued through February 1949. The amount paid on royalties accrued from January 1947 through February 1949 amount to $6,925.50. There is no allegation that defendants ever disavowed any rights under the contract of August 1946.

The Circuit Court rendered its decision in the infringement case in June 1950 after the answer in this suit had been filed. The Circuit Court held (182 F. 2d 824) that the jammed lug construction was an infringement on the Matthews patent. Defendants did not seek to amend their answer so as to allege the amounts they have been compelled to pay or liabilities incurred as a result of the infringement litigation.

The cause came on for trial on the issues raised by the pleadings. A jury was duly empaneled. At the conclusion of defendants' evidence plaintiff moved to dismiss as upon nonsuit defendants' counterclaim and to hold that defendants had failed to establish fraud or want of consideration. The court did not immediately rule on the motion but took a recess. When the court reconvened following the recess, it directed that a juror be withdrawn and a mistrial ordered for matters occurring during the recess. Thereupon the parties "stipulated and agreed that the Court may proceed to the taking of testimony in this case to its conclusion and answer the issues arising upon the pleadings in the same manner and in the same form as would have the jury had it been submitted to them. Each party for himself, through his counsel, having waived its constitutional right to trial by jury, it is specifically agreed that the answering of the issues by the Court shall, in all respects, shall be treated and shall have the same effect and dignity as though they had been answered by the jury heretofore impaneled." The court then overruled plaintiff's motion to nonsuit defendants' counterclaim. Plaintiff offered evidence relating to the counterclaim and

the affirmative defenses. The motion to nonsuit was not renewed at the conclusion of all the evidence.

The court, acting under the stipulation of the parties, submitted issues to itself which it answered as follows:

"1. Did the plaintiff and the defendants enter into the contract dated August 24, 1946, as alleged in the Complaint?

"Answer: Yes.

"2. If so, were the defendants induced to enter into and execute said contract by fraud, as alleged in the Answer?

"Answer: Yes.

"3. If so, did the defendants thereafter waive any such fraud by electing to continue under the contract and accepting its benefits?

"Answer: Yes.

"4. Was there a failure of consideration to support the contract in that defendants were substantially evicted from its benefits?

"Answer: Yes.

"5. What amount, if any, is the plaintiff entitled to recover of the defendants under the said contract?

"Answer: Nothing.

"6. What amount, if any, are the defendants entitled to recover of the plaintiff on their counterclaim?

"Answer: $6,925.50."

Plaintiff excepted to the issues submitted by the court. He tendered issues which the court refused to submit; he excepted. The only material difference in the issues submitted and the issues tendered by plaintiff is Issue No. 4. The fourth issue tendered by plaintiff read: "Was there a total failure of consideration to support the contract, as alleged in the Answer?"

When the court answered the issues submitted to itself, plaintiff moved to set the verdict aside as being against the greater weight of the evidence. His motion was overruled and he excepted. He then moved for a new trial for errors of law and excepted to the denial of his motion. He excepted to the rendition of the judgment on the verdict and appealed.

*Craighill, Rendleman & Kennedy for plaintiff appellant.*

*Taliaferro, Grier, Parker & Poe and Sydnor Thompson for defendant appellees.*

RODMAN, J. Experience has demonstrated that respect for and adherence to our statutory methods of procedure facilitates proper disposition of litigation. Our statute provides that the court shall, when a jury trial is waived, make separate findings of fact and conclusions of

law. G.S. 1-185. Findings of fact so made may be challenged by exceptions. When not so challenged or when so challenged and supported by any evidence, they are conclusive on appeal.

The agreement to disregard the statute deprives us of the benefit of specific findings of fact, presenting to us instead a verdict.

A general verdict is not a detailed statement of facts on which the law can be pronounced but a factual conclusion based on a previous declaration of the law given by the court to the jury. This factual conclusion must be correctly interpreted before a proper judgment can be entered thereon.

Plaintiff's exceptions and assignments of error only suffice to challenge the correctness of the judgment. They cannot affect the verdict. The motion to set aside the verdict as contrary to the evidence was addressed to the discretion of the court. The sufficiency of the evidence to go to the jury was waived by the failure to renew the motion of nonsuit at the conclusion of the evidence. *Debnam v. Rouse,* 201 N.C. 459, 160 S.E. 471.

If the answers to the issues, when correctly interpreted, are sufficient in law to support the judgment, plaintiff must fail in his appeal; but if, when so interpreted, they fail to support the judgment, it must be vacated in order that the rights of the parties may be adjusted in accordance with law.

Issues arise on the pleadings. *Nebel v. Nebel,* 241 N.C. 491, 85 S.E. 2d 76; *Bowen v. Darden,* 233 N.C. 443, 64 S.E. 2d 285. To interpret and understand the issues submitted to and answered by a jury, it is proper to examine the pleadings, the evidence, and the charge of the court when there is a charge. *Sitterson v. Sitterson,* 191 N.C. 319, 131 S.E. 641; *Jackson v. Casualty Co.,* 212 N.C. 546, 193 S.E. 703; *Taylor v. Stewart,* 175 N.C. 199, 95 S.E. 167; *Jernigan v. Jernigan,* 226 N.C. 204, 37 S.E. 2d 493; *Stewart v. Wyrick,* 228 N.C. 429, 45 S.E. 2d 764.

It is not sufficient to allege a cause of action to recover. The recovery must be based on the cause of action alleged. It cannot rest on a different legal right. *Myers v. Allsbrook,* 229 N.C. 786, 51 S.E. 2d 629; *McCullen v. Durham,* 229 N.C. 418, 50 S.E. 2d 511; *King v. Coley,* 229 N.C. 258, 49 S.E. 2d 648; *Simms v. Sampson,* 221 N.C. 379, 20 S.E. 2d 554.

With these well-settled legal principles in mind we look to the only sources available, the pleadings and the evidence, to interpret the verdict which the court, acting as a jury, has rendered.

The verdict states that the parties entered into a contract dated 24 August 1946. It is alleged and the evidence shows that the contract is in writing. It authorized the defendants to manufacture and sell in a designated territory for a fixed period a patented article, awnings, under a trade name, Koolvent. For the rights so granted defendants

made a cash payment and obligated themselves to make royalty payments based on the sale price of the awnings so manufactured. Defendants were to keep a record of and report the sales made. Each awning manufactured was to bear a tag showing it was manufactured pursuant to the Houseman patent.

The second issue is a finding that defendants were induced to enter into the contract by fraudulent representations of the plaintiff. The issue finds support in the allegations of the complaint.

The third issue and the answer thereto establish the fact that the defendants, with knowledge of the fraud, elected to waive the fraud *"by electing to continue under the contract and accepting its benefits."* This finding conforms with a fair interpretation of defendants' counterclaim and is established by all of the evidence.

There is no difficulty in interpreting the facts established by the answers to the first three issues. The difficulty arises in understanding what facts the court meant to establish by the affirmative answer to the fourth issue. The court finds there was a failure of consideration to support the contract in that defendants were substantially evicted from its benefits.

Standing alone, the language might justify an interpretation of complete deprivation of any benefit or rights under the contract. Such a meaning would harmonize with the assertion in the answer that there had been a total failure of consideration, but it is manifest that the finding did not have that meaning. Such an interpretation would be in direct conflict with the preceding finding that defendants acted under and enjoyed the benefit of the contract. It is of course impossible for one to be deprived of and to accept the benefits of a contract at the same moment. If the court meant total failure by its response to the fourth issue, why reject the issue tendered by plaintiff? There could be no doubt as to the meaning of that issue.

Turning to the pleadings for help in ascertaining the meaning, it is, we think, significant that defendants do not aver that they ever disavowed the contract or that they were deprived of all benefits under it. To the contrary, they assert that they acted under it with knowledge of the facts and made the payments now sought to be recovered. They allege they were induced to expect greater benefits from the contract than they obtained. Hence they claim they should be refunded all moneys paid, both those paid before the discovery of the diminished benefits as well as those voluntarily paid thereafter. There is no allegation of failure of consideration other than the allegations which charge fraud.

Looking at the evidence, it appears that defendants filed monthly reports with plaintiff showing royalties owing for awnings sold until

October 1949 when the contract terminated. In December 1948 defendants, in response to plaintiff's demands for payment of the guaranteed minimum, asserted their nonliability thus: "You had allowed us to run along for more than two years knowing that we had not sold the amount called for in the contract and you had never mentioned to us that you expected us to pay any royalties, except on what we actually sold." When this letter was written the defendants were being sued in the District Court charged with infringement of the Matthews patent. They knew of previous infringement suits.

Defendants do not allege any warranty or duty on the part of plaintiff to protect or indemnify them against claims for infringement. They do allege that they may become liable in damages because of the infringement on the Matthews patent and that the amount of their liability may equal the amount they have paid plaintiff. The absence of any allegation of plaintiff's duty to indemnify defendants for losses sustained by the infringement is significant when viewed in the light of evidence coming from defendants.

We turn to the evidence and events occurring at the trial to see what light may be thrown on the meaning of the fourth issue. It appears that defendants were notified in April 1947 of their asserted infringement on the Matthews patent. The defendant Allen went to Atlanta in May for a conference with plaintiff. Wynne advised Allen he might be forced to pay royalties to Matthews. It was then thought the jammed lug method of construction would defeat any claim of infringement. Negotiations were had with the owners of the Matthews patent for the right to use that patent. On 28 November 1947 Wynne wrote defendants, submitting an offer from the Matthews people to license defendants. He advised defendants they could exercise any of four options: (1) Meet the demands of the owners of the Matthews patent; (2) use the jammed lug method and await the results of litigation then pending on the question of whether that constituted an infringement; (3) fight the asserted infringement; or (4) quit Koolvent. The letter then stated: "Alternative (1) is rough but may offer the best solution . . . you will save part of that cost in a 1% reduction in my royalty charges. . . . Alternative (3) may possibly cost more in the long run . . . legal action is expensive and . . . if they should win . . . they can collect on back royalties and for their legal expense. Alternative (4) of course sounds to me like the worst possible solution." Again on 16 December 1948 defendants were given the right to cancel, but they did not exercise the option.

Defendant Allen testified that in January 1948 plaintiff promised "that he would reduce the royalties in the amount that the litigation would cost us." The record is barren of any evidence tending to fix the amount defendants were required to pay as a result of the infringement

litigation. The only evidence with respect thereto came from defendant Allen who testified: "Whatever we paid to the owners of the Matthews patent in 1950 was on the basis of an agreement or a consent judgment between us."

Defendants offered in evidence the opinion of the Circuit Court in the infringement suit. Counsel for defendants were called upon to state their purpose in offering the opinion. They replied: "We are not undertaking to recover for our expenses in this litigation, as such, but referring to that litigation for the purpose of showing the want of consideration. I offered it in evidence for the purpose of showing its effect on the contract."

The decree in the infringement suit instituted in Georgia was made final in January 1947. It is apparent that the court meant by its answer to the fourth issue that that decision constituted such impairment of benefits under the contract as not only relieved defendants from any obligation to continue to make royalty payments under their contract, but to permit them to recover the royalties which they had voluntarily paid after said decree was entered and when they had full knowledge of all of the facts.

Appellees in their brief maintain this as a sound principle of law. Hence the question arises: What is the law relating to licensor and licensee of patent rights with respect to moneys paid and liabilities accruing under royalty contracts?

The term royalty, when used in connection with the word patent, means the compensation or rent to be paid for the use of the invention. *Hazeltine Corporation v. Zenith Radio Corporation,* 100 F. 2d 10. The relationship existing between a licensor and a licensee of a patent has been compared with that of landlord and tenant. *Davis Co. v. Hosiery Mills,* 242 N.C. 718, 89 S.E. 2d 410; *Barber Asphalt Paving Co. v. Headley Good Roads Co.,* 284 F. 177.

There is no implied warranty or covenant of quiet enjoyment in the sale or lease of a patent right. *Hiatt v. Twomey,* 21 N.C. 315; *Cansler v. Eaton,* 55 N.C. 499; *Barber Asphalt Paving Co. v. Headley Good Roads Co., supra; Standard-Button Fastening Co. v. Ellis,* 34 N.E. 682 (Mass.). Hence covenants are frequently inserted in licensing agreements to protect the licensee against claims which may arise because of asserted infringement by licensee's use of the patent or against infringement on his right to use. *United States v. Harvey Steel Co.,* 196 U.S. 310, 49 L. Ed.. 492. In this respect the law is different from leases of realty. The tenant is protected by an implied covenant. *Poston v. Jones,* 37 N.C. 350; *Huggins v. Waters,* 154 N.C. 443, 70 S.E. 842; Landlord & Tenant, 51 C.J.S. 1005; 32 Am. Jur. 252.

Since royalties are the rents payable for the use or right to use the invention there is no obligation to make payments of rents accruing

after the right to use has terminated. Hence an eviction which deprives the licensee of the right to enjoy the license relieves him of the duty to continue making payments under the license. *Ross v. Fuller & Warren Co.,* 105 F. 510; *Drackett Chemical Co. v. Chamberlain Co.,* 63 F. 2d 853; *Patterson-Ballagh Corporation v. Byron Jackson Co.,* 145 F. 2d 786. But if what remains is of value to and is used by the licensee there has been no such eviction as to completely discharge him from liability to his licensor. So long as one recognizes the right to use a patent and acts thereunder, he is liable for royalties. *Hazeltine Research Co. v. Automatic Radio Mfg. Co.,* 77 F. Supp. 493; *Kinsman v. Parkhurst,* 18 How. 289, 15 L. Ed. 385. If he would escape liability for royalties he must disavow the contract and cease to use the right granted. *Lathrop v. Rice & Adams Corporation,* 17 F. Supp. 622; *Universal Rim Co. v. Scott,* 21 F. 2d 346; *Frost Ry. Supply Co. v. T. H. Symington & Son,* 24 F. Supp. 20; *Macon Knitting Co. v. Leicester Mills·Co.,* 55 A. 401; *In re Muser's Estate,* 203 N.Y.S. 619; *Kaffeman v. Stern,* 53 N.Y.S. 260; *Ross v. Dowden Mfg. Co.,* 123 N.W. 182; *Strong v. Carver Cotton Gin Co.,* 83 N.E. 328.

While an eviction discharges the licensee from any rent thereafter accruing, it does not relieve him from liability for rents which have accrued. "The defense of a licensee in an action for royalties must, to be sufficient, consist of 'something corresponding to an eviction.' *White v. Lee* (C.C.), 14 Fed. 789; *McKay v. Smith* (C.C.), 39 Fed. 556; *Holmes, Booth & Haydens v. McGill,* 108 Fed. 238, 47 C.C.A. 296; *Victory Bottle Capping Mach. Co. v. O. & J. Mach. Co.* (C.C.A.), 280 Fed. 753; *Birdsall v. Perego,* Fed. Cas. No. 1,435. The reason underlying this principle is fully discussed and considered in the cases cited, and need not be here repeated. As an eviction is not a defense in a suit by a landlord against a tenant for rent that became due prior to such eviction (*Smith v. Billany,* 4 Houst. (Del.) 113, 118; *American Bonding Co. v. Pueblo Inv. Co.,* 150 Fed. 17, 30, 31, 80 C.C.A. 97, 9 L.R.A. (N.S.) 557, 10 Ann. Cas. 357, so, by analogy and upon authority, an eviction is not a defense to a suit for royalties accruing before the eviction occurred." *Barber Asphalt Paving Co. v. Headley Good Roads Co., supra; Drackett Chemical Co. v. Chamberlain Co., supra; Metropolitan Trust Co. v. Fishman,* 55 N.E. 2d 837; *Monger v. Lutterloh,* 195 N.C. 274, 142 S.E. 12; 52 C.J.S. 266.

. The eviction of a licensee of a patent right occurs when there has been a judicial determination that the patent is invalid or the right has been so circumscribed as to be worthless. *Jenkins Petroleum Process Co. v. Eason Oil Co.,* 43 F. 2d 663; *McKay v. Smith,* 39 F. 556; *Consumers' Gas Co. v. American Electric Construction Co.,* 50 F. 778. The analogy to landlord and tenant is applicable. *Blomberg v. Evans,* 194 N.C. 113, 138 S.E. 593; *Smith v. Nortz Lumber Co.,* 7 N.W. 2d 435.

Here the pleadings and the evidence disclose that the asserted eviction took place in January 1947, that is, the adjudication by the Circuit Court of the Fifth Circuit that the Houseman patent in some of its details infringed on the Matthews patent. Defendants were informed of this decision in April 1947. Notwithstanding that knowledge they elected to continue to operate under their contract with plaintiff. They of course had the right to require plaintiff to agree to indemnify and protect them against any losses which they might sustain by so doing. The evidence shows that this indemnity agreement was given. They continued to act under their contract with plaintiff and voluntarily made payments to him with knowledge of all of the facts. When one voluntarily pays money for the privilege of exercising a right claimed by the one to whom payment is made and the payments are made with full knowledge of all facts which may impose a liability to a third person, he cannot, in the absence of an agreement to reimburse, recover the moneys so paid. *Wells v. Foreman,* 236 N.C. 351, 72 S.E. 2d 765; *Bank v. Taylor,* 122 N.C. 569; *Guerry v. Trust Co.,* 234 N.C. 644, 68 S.E. 2d 272; *Smithwick v. Whitley,* 152 N.C. 366, 67 S.E. 914; *Pardue v. Absher,* 174 N.C. 676, 94 S.E. 414; *Jones v. Assurance Society,* 147 N.C. 540; *Barber Asphalt Paving Co. v. Headley Good Roads Co., supra; Clifton v. Curry,* 10 So. 2d 51; Notes, 53 A.L.R. 949. Hence, when a licensee voluntarily pays to his licensor royalties with knowledge that a prior patentee claims an infringement in the exercise of the licensed right, he cannot recover royalties paid if it is subsequently adjudged that the use impinged on the property rights of another unless he is protected by contract of indemnity, and in that event his right to recover will be determined by the provisions of his warranty or indemnity contract.

Defendants have testified to a contract with plaintiff to indemnify them against losses which they might incur by reason of the infringement. They may, of course, by appropriate pleading protect themselves by such contractual rights as they have.

Appellees, in support of their position, cite an unpublished opinion rendered by Judge Hayes in June 1954 in the case of *Wynne v. Aluminum Awning Products Company.* We have read that opinion with care. Defendant in that action set up and pleaded a contract to indemnify it against losses sustained as a result of asserted infringement on the Matthews patent. As we understand and interpret Judge Hayes' opinion there is nothing in that opinion which is in conflict with the views we have expressed.

We hold there was error in adjudging that defendants could recover the moneys voluntarily paid. The facts have not been sufficiently established to make any adjudication with respect to royalties asserted to be owing but not paid. There is no allegation and no finding of fact

with respect to any warranty made by plaintiff to protect or indemnify defendants against loss on account of infringement. Nothing which we have said is intended to affect the rights of the parties on these questions.

New trial.

JOHNSON, J., not sitting.